GEORGE RICHBURGER *v.* STATE OF MISSISSIPPI.

[44 South., 772]

1. CRIMINAL LAW AND PROCEDURE. *Embezzlement. Code 1906, § 1136 Indictment. Language of statute.*

An indictment of a bank officer for embezzling money belonging to the bank, predicated of Code 1906, § 1136, defining the crime, is sufficient if it charge the offense in the language of the statute.

2. SAME. *Synonymous words.*

In such case, the offense being a statutory one, the indictment need not be drawn in the exact words of the statute, if words synonymous with those employed in the statute to define the crime be used.

3. SAME. *Care or possession.*

Under Code 1906, § 1136, making it a crime for any agent, clerk, officer, etc., to embezzle money which shall have come to his "care or possession," an indictment charging that the defendant

had the money under his care is sufficient, as would be one charging that he had the same in his "possession."

4. SAME. *Embezzlement of money. Amount. Value.*

An indictment for embezzling an amount of money need not charge the value of the money; the words "amount" and "value," when applied to money, are synonymous.

5. SAME. *Under defendant's care. From whom received.*

An indictment for the embezzlement of money, charged to have been under defendant's care, is not objectionable for failing to charge from whom he received it.

6. SAME. *Appeal. Supreme court practice. Code 1906, § 4936. Questions not raised at trial.*

Under Code 1906, § 4936, providing that a conviction shall not be reversed for error not jurisdictional, if not made a ground of special exception in the trial court, a conviction of a cashier of a bank for embezzlement from the bank will not be reversed because the indictment charged him as cashier, and not as a director, agent, clerk, servant, or officer of a corporation, where the objection is presented for the first time on appeal.

7. SAME. *Case: Indictment.*

The indictment, alleging that defendant on a specified day, being the cashier of a certain bank, a corporation chartered under the laws of Mississippi, did by virtue of his employment as such cashier have under his care of the property of the bank a large sum of money, which had come into his possession and had been intrusted to his care and keeping by virtue of his employment as such cashier, and did afterwards, without the consent of the bank, wilfully, unlawfully, fraudulently, and feloniously embezzle the same, and fraudulently and feloniously convert it to his own use, in the absence of an objection in the trial court that he was charged as a cashier and not as a director, agent, clerk, servant or officer of the bank, sufficiently charged the crime of embezzlement as defined by Code 1906, § 1136.

8. SAME. *Application for continuance.*

An application for a continuance, failing to show that defendant had knowledge that he could prove the matters stated, is insufficient.

9. SAME. *Other evidence. Admissions to prevent continuance.*

The denial of a continuance asked for by a defendant because of the absence of a witness does not constitute reversible error where the state admitted that the witness, if present, would

testify as claimed and the testimony related largely to matters provable by writings easily accessible, and some of them were actually introduced.

10. SAME. *Amendment of indictment. Code 1906, § 1509. Order on minutes. Entry nunc pro tunc.*

An order of court actually made, under Code 1906, § 1509, regulating the subject, authorizing the amendment of an indictment, may be entered on the minutes of the court, from which inadvertently omitted, after the conviction of defendant and upon the hearing of a motion for a new trial or other motion predicated of the omission.

11. SAME. *Code 1906, § 4936. Objections not made on trial.*

Under Code 1906, § 4936, providing that a conviction shall not be reversed for error not jurisdictional, unless made a ground of special exception at the trial, an objection that an indictment was amended without entry on the minutes of the order allowing it, as required by Code 1906, § 1509, cannot be heard for the first time on appeal.

12. SAME. *Embezzlement. Indictment. Variance. Name.*

Where a bank from which money was alleged to have been embezzled by defendant was chartered as the "Jonestown Bank of Jonestown," and the indictment designated it as the "Jonestown Bank," the variance was immaterial.

13. SAME. *Bill of particulars. Appeal. Discretion. Review.*

Whether the trial court should grant or deny an application for a bill of particulars being within its discretion, the overruling of accused's objection to a bill of particulars furnished under the court's order, which proved unsatisfactory, will not be reviewed on appeal, unless a gross abuse of discretion be shown.

14. SAME. *Prejudice.*

Where, in a prosecution for embezzlement, the state was required to elect on which items of the charges it would base its demand for a conviction, and it elected two items of the same date, accused was not prejudiced by the court's refusal to require a bill of particulars furnished to be made more certain.

15. SAME. *Election.*

Where the evidence so far failed to establish embezzlement in one of two transactions occurring on the same day, which were elected by the state to support a conviction, that no reasonable person would have believed the conviction was based on it, accused was not prejudiced by the fact that the state was allowed

to elect two items of the charges, instead of being limited to, a single item.

16. SAME. *New trial. Hearing. Code* 1906, § 801.

Under Code 1906, § 801, providing that, when a motion for a new trial shall be granted or refused, either party may reduce to writing the reasons offered for the new trial, etc., and tender same as a bill of exceptions, which shall be signed by the trial judge, on which error may be assigned, the circuit court, on the hearing of a motion by accused for a new trial, is only required to consider the reasons assigned therefor in writing.

17. SAME. *Assignment of grounds.*

A general complaint that the court erred in admitting illegal, incompetent, and irrelevant evidence, or refusing to admit legal, competent and relevant evidence, is insufficient.

18. SAME.

A motion for a new trial for erroneous rulings in the admission or rejection of evidence should designate each of the particular rulings complained of, and make such specific reference to the evidence as will clearly disclose to the trial judge the rulings questioned.

19. SAME. *Reference to bill of exceptions.*

A motion for a new trial, which refers to the evidence as contained in the bill of exceptions, or other writing not filed when the motion was acted on, though filed thereafter, is too indefinite, and presents no question concerning the evidence for review.

20. SAME.

Objections in a motion for a new trial that the court erred in admitting incompetent evidence for the state over objections and exceptions of accused, and in excluding competent evidence offered by accused, are insufficient.

21. SAME. *Construction. Presumption.*

A court is not bound to help out a defective motion for a new trial by construction or supposition.

22. SAME. *Evidence. Admissions against interest.*

Declarations by accused, which are admissions against interest, are admissible.

23. SAME. *Voluntary confessions.*

Declarations by accused, which constituted voluntary confessions, are admissible.

Statement of the case.

24. SAME. *Embezzlement. Money. Credits.*

The conviction of the cashier of an insolvent bank for embezzling its money will not be vacated as unwarranted where, his accounts being largely overdrawn and knowing it could not make him an unsecured loan, he, while absent from the bank, issued his check on it for five hundred dollars, and, being in the bank when several checks, including it, were presented for payment by a collector, executed to the collector the bank's check for the aggregate sum of all of them, drawn upon a trust company in which the bank had a deposit and which was paid in money upon presentation.

25. SAME. *Defenses. Deposits.*

Where the cashier of a bank in failing circumstances misappropriated five hundred dollars of its funds, his account being largely overdrawn, it was no defense to a prosecution for embezzlement that he deposited to his general account after such misappropriation five hundred and four dollars, since, under the rule of appropriation of payments, such deposit was properly applied to the former overdraft.

26. SAME. *Venue. Offense committed partly in two states. Code* 1906, §§ 1404, 1405.

Where the cashier of a bank misappropriated its funds on deposit in a bank in another state by means of checks, one drawn in this state and one in the other, he may be indicted for embezzlement in this state, under Code 1906, §§ 1404, 1405, providing that where an offense is begun out of this state and consummated in it or is begun within the state and consummated out of it the prosecution may be had in this state where begun or consummated.

27. SAME. *Misconduct of counsel. Argument.*

The trial court should not hesitate of its own motion to prevent counsel for the state from abusing his right to argue the cause to the jury.

28. SAME. *Appeal. Objection not made at trial.*

Misconduct of counsel cannot be reviewed, where accused made no objection thereto at the time, nor until after verdict.

FROM the circuit court of, second district, Coahoma county. HON. SAMUEL C. COOK, Judge.

The appellant, Richburger, was indicted, tried and convicted of embezzlement, sentenced to the penitentiary for two

years, and appealed to the Supreme Court. The facts are fully stated in the opinion of the Court.

*J. W. Cutrer, Alexander & Alexander,* and *George B. Power,* for appellant.

It might have been competent for the state to have indicted and tried appellant for the embezzlement of a general balance due on his account, and this is what the state by indictment charged, and by its evidence sought to prove. The effect of the course taken by the state was that the entire history of the Jonestown Bank of Jonestown was going into, and a trial had, as though the issue were one between the bank and its depositors. The trial ceased to be one of defendant for embezzlement, and became a trial of the bank as to its dealings with the public and its customers.

There was a demurrer to the indictment, which was overruled, and this action of the lower court is assigned for error. We will not discuss this at length. The indictment did not state that appellant had in his *possession* the money of the bank in the said county and district. It alleged that he had under his care the said sum, which had come into his possession and had been entrusted to his care by virtue of his employment as cashier; but one can have under his care property in a different county from his residence, or in a different state. Money cannot be embezzled except by its being actually taken and appropriated. Embezzlement must occur where the money is. The force of this objection becomes apparent when we look to the proof, which shows that in fact the sum of $522.72, which was paid on the checks of Richburger, was not paid in this state but in Memphis, Tennessee. The indictment is for embezzling money alone, not checks, nor drafts, nor evidences of debt, but actual money. The money paid out on the checks for $522.72 was, when the checks were paid, not in Mississippi, but in Memphis, and the only reduction made in the assets of the bank

thereby was to reduce, by that amount, its deposit in a Memphis bank.

The indictment was fatally defective for another reason. It was framed on our statute, which does not use the word "cashier." The persons mentioned in the statute, Code 1892, § 1058, are "director, agent, clerk, servant, or officer of any incorporated company." Appellant is not brought within any of these classes unless the court can assume, as a matter of law, that a cashier is within some one of these designations. The indictment does not so state. It was necessary therefore that the indictment should either allege that defendant was an agent, clerk, servant, or officer of the bank, or that he was cashier thereof, and that as such cashier he was an agent, clerk, servant or officer. The indictment being on a statute must conform strictly thereto. The demurrer to the indictment should have been sustained.

One of the first errors we notice, and which is a fatal one, is, that defendant was tried on an amended indictment which had not been amended as expressly provided by law. In *Shurley* v. *State,* 43 South., 299, decided April 1, 1907, this court held that Code 1906, § 1509, is mandatory, and that the amendment must be made by an order on the minutes specifying precisely the amendment made. It is a vicious and dangerous practice, and one subversive of the fundamental rights of the accused, to allow the district attorney to amend an indictment by erasing words and clauses, and by interlineations. The indictment in this case alleged embezzlement of money, the property of the Jonestown Bank. The state itself produced and introduced the character of the bank which showed that its corporate name was "The Jonestown Bank of Jonestown." The words, "of Jonestown," were as much of the corporate name as the first word "Jonestown," or the word "bank." It was the only rightful name that the bank had. When the state discovered this variance, it asked leave to amend, and this was allowed over the objection of appellant. Even when the amendment was made, the

erroneous name was not stricken out and the true name inserted, but the indictment was altered by the district attorney so as to read "The Jonestown Bank, alias The Jonestown Bank of Jonestown." An alias is proper only where a person is known generally by two names and the grand jury does not know which is the true name, and in such case the indictment should aver that the true name is unknown to the grand jurors, but none of these facts or conditions are shown. It is simply a case where on the trial the state by its own proof developed a variance, and, to cure it, the district attorney, instead of having the court proceed in the manner expressly mapped out and required by Code 1906, sec. 1509, himself assumed to make the amendment by erasures and interlineations. Unless *Shurley* v. *State* is to be ignored, the judgment in this case must be reversed for this obvious error.

It must be noted that there was no effort on the part of the state to avoid the necessity for an amendment by introducing any evidence to show that the bank was usually known by the name of "The Jonestown Bank." In the absence of such showing an amendment giving an alias designation would be improper in any event; but, if it were necessary and proper, the amendment cannot be made except in the manner pointed out by the code.

On the motion of appellant, the court ordered the state to furnish a bill of particulars. As the offense had been charged in a general way, it was the right of the appellant to have such a bill of particulars furnished. 15 Cyc., 513. To secure such a bill of particulars Richburger filed a sworn application, setting out the necessity for it and in what respect he would be prejudiced if it were not furnished. The court held his showing sufficient and sustained his application. And, thereupon, the state filed what purported to be a bill of particulars, but what, on the contrary, was a bill of generalities. A bill of particulars is allowed by law, and was ordered by the court in this case to make specific the charge and narrow the inquiry,

to direct appellant's notice to the particular transactions relied on for a conviction, to enable him to prepare his defense as against the specific case to be made by the evidence in respect to the particular transactions constituting the crime. If the bill of particulars, instead of narrowing and making more specific the inquiry, goes far beyond the indictment itself and contains new and distinct charges and sets out incompetent and irrelevant matter prejudicial to defendant, then the bill of particulars becomes a mockery of justice. The requirement that the state furnish a bill of particulars was in the nature of a requirement that the state elect what it would stand on and give appellant notice thereof. The indictment was known to the parties to charge the embezzlement of a general balance of account, although not so framed as to show this. If it be insisted that it was competent for the state to stand on the indictment as drawn, and under the order for a bill of particulars give notice that the indictment and prosecution would be treated as if it were the embezzlement of the amount shown by the aggregate overdraft of defendant, the answer is that this was not done. On the other hand, the trial was not finally had for the embezzlement of a general balance, but for two specific items making up the sum of $522.72. The bill of particulars added insult to injury. The appellant, following his strict legal right, moved the court that the state be required to file a bill of particulars giving defendant information "as to the time and place when he, the said defendant, is alleged or charged to have received from the said Jonestown Bank the money stated in the indictment to have been by him so received, and the person from whom he, the said defendant, so received the said sum of money so alleged to have been embezzled." Instead of narrowing the inquiry down to some one item, the bill of particulars enlarged the charge in many ways; instead of giving notice of the time and place and the amount on which the state would elect to stand, and to meet which the appellant would be called on to produce evidence, the bill of particulars, which, when

filed, became part of the charge against defendant, alleged that the state would prove on the trial that in 1903, three years before the act of embezzlement in question, appellant was indebted to the bank in the sum of $5,000, for which he gave an insolvent note, and that thereafter he began to appropriate funds of the bank by checking them out from time to time until January, 1906, the defendant took at divers and sundry times various sums of money belonging to the bank and squandered it in gambling, the funds amounting to in the aggregate $8,655.59. The facts which appellant wished to have disclosed by the bill of particulars, the state refused to give, viz., the dates and amounts of the alleged embezzlement. The bill of particulars went further and stated that it was shown that appellant embezzled more than the entire capital of the bank and gambled it off, and fled, and returned, and confessed to various persons that he had embezzled the funds of the bank, and "wrecked and robbed the bank and was sorry that he did so and asked to be forgiven for it." And, as if the wrong and injustice to appellant was not enough, the bill of particulars went on to allege that the state would show that defendant, knowing that the bank was insolvent, induced people to put their money in it in order that he might embezzle the same, thus alleging a distinct and independent crime, viz., that of receiving deposits while the bank was insolvent.

This so called bill of particulars having been over appellant's objection filed, the district attorney proceeded to give evidence for the state through as wide a range as, and even wider than, that indicated in the bill of particulars.

When the bill of particulars, containing these new and distinct charges, was allowed to be filed, appellant asked for a continuance in order that he might meet the case which the state now for the first time indicated that he would have to meet. His application, supported by affidavit for continuance, was overruled, and this is assigned for error. Surely, if the court, by allowing the bill of particulars to be filed, opened up

to the state another field of inquiry shown in the bill of particulars, it was proper to give the appellant time to prepare for it. The books of the bank were never kept by Richburger but by others who were bookkeepers. The state expected to rely and did rely mainly on the books of the bank for its evidence. It was therefore exceedingly important and vital to defendant that he be given a continuance or postponement in order that he might have an opportunity to prepare to meet the case made by the bill of particulars. He had not at any time during the year 1906 had access to any of the books, papers or records of the bank. They were in the possession of receiver Nachman who was a resident citizen of the second district of Coahoma county, but was temporarily out of the state, and who had come into possession of and knew all about the state of appellant's account with the bank and the securities which he had given for the amounts obtained by him from the bank from time to time. The application for continuance averred that the receiver would return before the next term of court, and would be in attendance. There was no effor to controvert the statements of this sworn application, but the court overruled the same and forced appellant to trial.

In order to illustrate and make plain the injustice of the procedure, especially in the matter of incompetent and prejudicial evidence introduced over appellant's objection, we will proceed briefly to notice the course of the trial. The state began by introducing the charter granted in 1898, and then introduced the stock book showing the amount and distribution among the stockholders of all the stock of the bank that was paid in. These shares of stock were issued as early as 1899. There is not a particle of evidence that there was anything wrong about the issuance of the stock, or fixing the amount of the stock, or how it was to be paid for. The stock was issued several years before the first items appear in the account between Richburger and the bank, and it will be seen that the state began on June 30, 1903, to take up and investigate the

account between defendant and the bank, showing the same solely by the books themselves. .Who owned the stock of the bank and how it was paid for, and when, were wholly immaterial, but it was exceedingly prejudicial to go into the question of the ownership and distribution of the stock, since it showed what persons in the county and district lost money by the bank. An illustration of this illegal evidence and the wide range it took and how prejudicial it must have been is shown, in that the state was allowed over appellant's objection to show how the bank was organized, and its stock subscribed for, and when it was paid, and by whom; these transactions going back to the beginning of 1899.

We most earnestly press upon the attention of the court the fatal error of allowing evidence to take such a wide range. It must not be forgotten that the circumstances were such as to inflame the public against appellant. Every stockholder, every depositor, who loses money by a bank which fails, becomes at once active in the pursuit of the official supposed to be responsible, and becomes a nucleus of influence and effort making for his conviction. The injustice of the course taken in the trial cannot be made more apparent than by a general view of the range and scope given to the evidence. It was wholly immaterial who were the stockholders, and which stockholder had paid up his subscription and which had not; but, it was a most potential fact before a jury to let the jury know who of the citizens of the county had suffered a loss.

Witness after witness testified over appellant's objection as to how much he had in the bank and how much he lost. All this had no possible connection with the question whether appellant embezzled the particular item charged, on December 8, 1905. There was not even an effort to show when the deposits were made by these several witnesses, nor the circumstances, nor whether they relied to any extent on Richburger. In the next place, the court allowed the state to introduce to the jury the entire pleadings and court papers in a chancery suit, brought by

creditors of the bank for the purpose of obtaining a receiver. The bill in that case which was not sworn to by any complainant, contained many serious charges against the appellant which could not be evidence in this case, and also set out certain dispositions made by him of his property which the creditors were seeking to reach and subject.

It was therefore manifest error to allow the chancery record to be introduced and read to the jury. There is nothing to show that it was not read.

The court allowed the state to prove over appellant's objection by Hyman and by Longino, two witnesses for the state, many so-called confessions made by Richburger after the bank had closed its doors. No one of these was a confession of the crime charged, and such action constituted reversible error.

There was a variance between the indictment's allegations and the evidence in that the indictment charged that appellant embezzled money, whereas the evidence offered by the state showed an embezzlement, if any at all, not of money but of checks.

However wrong Richburger may have acted in the management of the bank, it must not be forgotten that he is now being tried for embezzling only two sums of money. If all the mass of prejudicial testimony which had been introduced before the election is permitted to remain and make up the state's case, then the filing of a bill of particulars and the election of two items were indeed a farce.

It was error to refuse appellant's demand that the state elect as between the $500 and the $22.72 check. If there was any necessity or propriety in electing at all, the election ought to go so far as to stand on a single item and not on two. *Malcolmson* v. *State*, 25 Tex. App., 267. It is not shown that there was any connection whatever between the transactions. The checks were drawn at different times and for different purposes. Would an indictment in setting out in the same count these two distinct acts of embezzlement be tolerated? If not,

how can they be joined on the trial, especially under an indict-
ment and under a bill of particulars, neither of which men-
tions these checks?

The court should have directed a verdict of acquittal because
some of the essential elements of embezzlement were wanting
in the case made. No felonious intent had been shown. In
order to show felonious intent, it is essential that there should
be some kind or degree of concealment or acts of the servant
misleading the master. 1 Whar. Crim. Law, sec. 1030; *State*
v. *Tompkins,* 32 La. Ann., 620; *Calkins* v. *State,* 98 Am. Dec.,
132; *Fleener* v. *State,* 58 Ark., 98.

There was not the slightest evidence in this case of any
secrecy or effort to conceal on the part of Richburger. Every
transaction relied on by the state openly and correctly ap-
peared on the books of the bank. These books were subject to
the inspection of the president, board of directors, and stock-
holders. There is no proof that any one of them was misled.

In the next place, the verdict of acquittal should have been
National Bank of Helena, and is not shown ever to have been
received and appropriated by appellant within the jurisdiction
of the court. Bear in mind that the state elected to stand on
the two checks drawn by Richburger on December 8, 1905;
one of these was $12.72, which in some way was entered up
as $22.72. However this error may have occurred, the fact is
that this check was never marked paid; no cash was received
on it by Richburger. It was passed to the credit of the First
National Bank of Helena, and is not shown to ever have been
drawn out. Indeed, it is not denied that no money was ever
paid out to any one on this $22.72 check. The other check was
$500, drawn in favor of the Conaulk Millinery Company by
Richburger, on or about December 5. It was sent to the mil-
linery company and deposited with a Memphis bank, and by it
endorsed to another bank and sent with other collections on the
Jonestown Bank through the American Express Company. It
was not paid to the express company, but the draft on Memphis

was given by the Jonestown bank to the express company covering all the collections, and this draft was forwarded through the American Express Company, and paid in Memphis. The effect was merely to reduce the amount the Jonestown bank had on deposit in Memphis. We submit that it was necessary to show that appellant received and appropriated money belonging to the bank within the jurisdiction of the court.

Some act of appropriation must be alleged and proved to have taken place within the jurisdiction of the court. *Larkin* v. *People,* 61 Barber, 226; *State* v. *Bancroft,* 22 Kansas, 170; *Carr* v. *State,* 104 Ala., 43.

The state attempts to justify the wide range taken by evidence solely as tending to show intent. The effort was to apply the rule which has found pretty general recognition that other and closely related acts of embezzlement may be shown to illustrate the intent. We do not deny this general rule, but it has no application to this case. Evidence of other acts can have no further legitimate effect than to show guilty intent, and, where competent for that purpose, the court must inform the jury that it is so limited, and confine the evidence within its proper scope. A failure to do so will cause a new trial. *Commonwealth* v. *Sheppard,* 1 Allen, 575; *Hoyt* v. *State,* 50 Ga., 313; *Cribbs* v. *People,* 82 Ill., 425.

The judgment of the court below should be reversed because of improper argument before the jury by one of the prosecuting attorneys in the court below.

There was also reversible error in the lower court's granting the instructions for the state shown to have been granted in the record; and also error in refusing and modifying those asked by appellant and so noted in the record.

*R. V. Fletcher,* attorney-general, for appellee.

It is insisted by counsel for appellant that the indictment in this case is drawn under Code 1892, § 1058, and that this section does not make a "cashier" liable to punishment for em-

bezzlement; that the statute limits the crime to "directors, agents, clerks, servants, and officers"; and hence the indictment is fatally defective because the cashier is not described as belonging to some one of this designated class. The indictment does charge that, as such cashier, appellant had under his care the money of the bank, that such money was in his possession, and was entrusted to his care. This point is raised for the first time in this court, this objection not being specifically stated as ground for demurrer in the court below. It is submitted that unless the omission is such as to render the indictment void as charging no offense, the court cannot consider the matter because of the failure of the defendant to make it ground of demurrer. This ground of objection could not be considered by the trial court because of Code 1892, § 696, expressly providing that the court shall regard only such defects and imperfections as are assigned for causes of demurrer; and this court can not now for the first time consider it because of Code 1892, § 4370, prohibiting this court from reversing a case unless the error complained of was made ground of special exception in the court below. Of course, jurisdictional errors are excepted from the rule. But, if mistaken in this, the state contends that the designation of defendant as "cashier," taken with the recitals of his duty in the indictment, sufficiently describes him as an officer or agent of the corporation, since he is shown thereby to have the care, custody and control of the money of the bank, by virtue of his employment as cashier.

There need be no direct averment in express words that the defendant was a bailee, trustee or agent where facts are set forth showing that he was such. 7 A. & E. Pl. & Pr., 418.

The term "cashier," as applied to a bank, has a fixed, certain and well understood legal meaning, and has been defined as the executive officer of a bank by whom its debts are received and paid and its securities taken and transferred, and as one who conducts the whole financial operations of the bank. *Mer-*

*chants Nat. Bank* v. *State Nat. Bank,* 10 Wall. (U. S.), 650.

The use of this word "cashier" in the indictment is, therefore, equivalent to a charge that the person so described is an officer of the bank.    An information for embezzlement, which fully states the facts constituting the crime, is good though it does not designate the accused as "bailee," "trustee" or "agent," nor formally put him in any of the classes named in the statute defining embezzlement.    *People* v. *Johnson,* 71 Cal., 384; *People* v. *Neyce,* 86 Cal., 393; *State* v. *Washington,* 6 South., 633.

It is not always necessary to follow the precise language employed in a statute, if words of equivalent meaning are employed.    *Harrington* v. *State,* 54 Miss., 490.

In *Roberts* v. *State,* 55 Miss., 421, the court held that an indictment was not bad because the building burglarized was described as a "corn crib" when the statute mentioned only "shop, store, booth, tent, warehouse, or other building, etc.," saying that it is sufficient if the words of the indictment are synonymous with those of the statute.

It is insisted by appellant that the indictment is bad because the Jonestown bank is described as a "corporation" while the statute uses the expression "incorporated company."    This is far too refined.    No real or substantial distinction exists between a "corporation" and an "incorporated company."    It is manifest that the terms are used as synonymous and interchangeable, and the use of the one expression is equivalent to the other.    *Roberts* v. *State, supra.*

The indictment is assailed also because in one place it asserts that defendant had under his care certain property of the bank, and in another place it asserts that the money had come into the possession of defendant, and had been intrusted to his care and keeping, etc., and some fanciful distinction is sought to be drawn between "care," "possession," "custody," etc.    But the conclusive reply to this criticism is the statute itself, which provides "which shall have come or been entrusted to his care or possession by virtue of his office, etc."    Counsel are not accurate

in their statement that the offense would be larceny if the prop-
erty were in his "custody," and embezzlement if in their "pos-
session." Always it is embezzlement if there is no trespass, and
it would be difficult to conceive of trespass in connection with
property placed under another's custody. Indeed, the dis-
tinction between "care," "custody," and "possession" is over
technical and not practical. The indictment does charge that
Richburger was the cashier of the bank, and that by virtue of
such position he came into the possession of the certain monies
there set out, and that such monies were in his keeping and
under his care. Surely, this is sufficient.

But it is argued that the indictment does not allege that the
money came into appellant's possession or was embezzled in
the county or district where the prosecution was had. But
how can this be seriously argued when the caption recites the
district and county? The first line of the description of the
substantive crime recites "in said district of said county," and
before each allegation in the indictment occurs the phrase "then
and there," always pointing back to the original allegation of
place. Whether the proof showed a crime committed within
the jurisdiction of the court is another question to be considered
by the court later in the trial, but it is evident from an inspec-
tion of the indictment that every element of the offense is
plainly charged as taking place in the second judicial district
of Coahoma county.

But it is contended by appellant that there is no allegation
in the indictment of an intent to defraud or deprive anyone
of his or its property. This indictment alleges that the appel-
lant did "fraudulently embezzle." This expression tells the
whole story, and includes the idea of intent to defraud, and the
intent to deprive of property. Certainly, in an indictment for
larceny it is not necessary to allege in addition to an allegation
of the felonious stealing that it was with fraudulent intent to
deprive of property. All these elements are embraced in the

term "steal," and so likewise they are embraced in the term "embezzle."

The statute under which this indictment is found does not say anything as to intent, and this being true, the point is perfectly covered by this rule: The indictment must with certainty and precision charge the defendant with acts of commission or omission, under the circumstances, and with the intention mentioned in the statute; but where the statute does not in specific words make criminal intent an element of the offense, further than is necessarily included in the words "embezzle, convert to his own use, or make way with any secret," fraudulent intent need not be charged in so many words. 7 A. & E. Ency. Pl. & Pr., 441, and authorities there cited, especially the Nevada and Kansas cases mentioned in the note.

But it is claimed that the property is not specifically described, and it is said that the larceny rule must prevail. The property embezzled is described as money, and this is sufficient under Code of 1892, § 1364.

Appellant's application for continuance was grounded upon the absence of one Nachman, formerly receiver of the insolvent bank; one Lea, who testified in the case, being his successor. Nachman had never been served with process, it being shown that he had not been within the jurisdiction of the court since the indictment was returned. It is not shown where Nachman was at the time of the trial, but it was stated that he was absent temporarily and would be back before the next term of court. The court overruled the application, but required the state to admit that the witness, if present, would swear to the facts set out in the affidavit. A close examination of the affidavit filed with the application will show that Nachman was desired, not in order to prove any specific facts, but that defendant might ascertain whether he, Nachman, *knew* any facts. It is not pretended that Nachman had any papers not at the time of the trial in possession of the receiver. It is

stated in the application that some undesignated papers were turned over to Nachman which are not now in the hands of the receiver, but it is not pretended that the papers set out in the affidavit and application were in the form of notes or promises to pay. They were simply "accounts, claims and demands." When the court required the state to admit that these claims were turned over, or that Nachman would testify that they were, appellant received the benefit of everything which Nachman could say. This is not a case where the personal presence of the witness would add strength to defendant's cause. Were he an eye witness to a material fact, his presence and bearing might turn the tide. But if present, he could only identify some accounts, and their admission as true would answer the same purpose. It is charged that Nachman received transfers of real estate from Richburger, but surely the deed records of the county would show these transfers, and certainly some other citizen could be found who could speak intelligently as to their value. The application does not state clearly and unequivocally that the papers about which Nachman was expected to testify were not turned over to Lea, his successor. It is stated that the papers so turned over had been examined, but with what result, deponent sayeth not. This court will not require the trial court to delay a trial in order to give defendant an opportunity to hunt for evidence not known to exist, as was expressly held in *Hemingway* v. *State,* 68 Miss., 371. Furthermore, many, if not all, of the credits, accounts, etc., alleged to have been turned over to Nachman, as receiver, were gone into on the trial. Many of them were shown to be worthless, and the others, at a fair valuation, entirely insufficient to balance the deficit.

As concerns the bill of particulars, if the court had refused to require the state to file any bill of particulars at all, such action could not be assigned for error. For the granting of such a bill, not being mentioned in the statute nor fixed by decision as part of our practice, rests entirely within the discre-

tion of the trial court and is not generally open to revision by
a higher tribunal. 1 Bishop's Cr. Pr., 381. It would neces-
sarily follow that the trial court would exercise an unreviewable
discretion as to the sufficiency of a bill of particulars when
filed. Besides, the bill filed was as specific as could have been
made. It gave the dates of the inception of the embezzlement,.
recited a constant course of increasing overdrafts, stated when
such overdrafts were closed by a worthless note, recited a new
series of overdrafts, culminating in the exhaustion of the bank's
funds on a day named. It could hardly be demanded that each
separate check or overdraft should be named. That the alleged
insufficiency of the bill of particulars could have had no harm-
ful effect is shown by the course the trial took. Ultimately,
the state elected to stand on two items, aggregating $522, both
paid on the same day, and of such a nature that the defendant
had every opportunity to explain them. The agent of the ex-
press company, who collected the $500 check, was present in
court and explained the whole transaction. The books spoke
for themselves as to the condition of the cashier's personal
account. The sole issue finally submitted to the jury com-
prised essentially these two elements, viz.: the overdrawn state
of Richburger's account at the time, and the fact of his paying
these two checks. Upon both facts there could be no question
of surprise, and had no bill of particulars been furnished, de-
fendant would not have been prejudiced.

As regards the amendment of the indictment, it appears that
the bank defrauded was referred to in the indictment as the
"Jonestown Bank." But when the charter was introduced in
evidence, it appeared that the true corporate name was "The
Jonestown Bank of Jonestown." Objection being made to the
introduction of the charter, the district attorney applied to the
court for leave to amend the indictment and, by leave of the
court, the indictment was accordingly amended by inserting
after the name "Jonestown Bank" wherever it occurred in the
indictment the words "alias Jonestown Bank of Jonestown."

It is insisted that it nowhere appears that this amendment was made by entry on the minutes, and that the case falls within the rule laid down in *Shurley's case, Ante* 415, 43 South., 299, decided April 1, 1907. But in *Shurley's case* the district attorney amended the indictment without leave of the court, and without application to the court. In the instant case the indictment was unquestionably amendable under Code 1892, § 1435, and the district attorney properly applied to the court for leave to amend, which was granted, and the indictment was amended accordingly. The only real complaint is that there is no transcript in the record showing the minute entry. Now, the order was made by the court, as is shown by the stenographer's notes. The record does not show that the amendment was entered on the minutes, but this was not made ground of special exception in the court below. Objection and exception were taken to the action of the court in allowing the amendment, but nothing was said as to the order not being entered on the minutes. The alleged error can, therefore, not be considered. Code 1892, § 4370. *Ex parte Neil,* recently decided by this court. But if mistaken in this, it is a conclusive answer to the objection to say that no amendment was necessary. Certainly, it was not necessary to amend unless a variance was presented. It was shown that the bank was located at Jonestown, and transacted all its business under the name of the "Jonestown Bank." The variation in the name by omitting the words "of Jonestown" was immaterial. 10 Ency. Pl. & Pr., 510, and authorities there cited; *Putnam* v. *U. S.,* 162 U. S., 687 (40 L. Ed., 1118); *Rogers* v. *State,* 90 Ga., 463.

If it is argued that the court should have confined the proof to the single items upon which the state finally elected to stand, and not have permitted proof of other overdrafts, the answer is that nothing is better settled in the law of embezzlement than that other acts of embezzlement may be shown, all being a part of the same system, for the purpose of showing

the intent with which the act was done.   See 1 Wigmore on Evidence, 329 and 304.

It was competent to show that the money of the bank had been made away with, and this by the testimony of depositors. *Reeves* v. *State,* 11 South. (Ala.), 158.

It is insisted by appellant's counsel that the court below ought not to have admitted the statements made to others by Richburger before the trial, as to the condition of the bank and his connection therewith.   But these statements were clearly admissions against interest, tending to show the condition of the bank and the connection of defendant therewith, and his responsibility therefor.   In these statements, he admits responsibility, confesses his wrongdoing and begs for toleration and forgiveness.   It is immaterial whether these statements be classed as "confessions" or not.   They were admissions of guilt and, as such, competent.

It is contended by opposing counsel that the state should not have been permitted to select two items and ask for conviction on both, but should have been limited to one only.   Now, it is by no means clear that the state was compelled to elect at all. It could have stood for a conviction for the whole sum embezzled, and if so, why could not two items, both occurring on the same day, be selected?   "An embezzlement may consist of a continuous series of acts."   10 A. & E. Ency. Law (2d ed.), 995.

But it is contended by opposing counsel that the indictment charged an embezzlement of money, whereas the proof shows an embezzlement of checks.   This will not do.   The stockholders and depositors paid actual money into the bank, and this money was embezzled.   The money, or its equivalent, was sent to Memphis, Tennessee, for convenience in remitting, and held by the Jonestown Bank's Memphis correspondent.   It was still the money of the bank whether on deposit in Jonestown or Memphis.   The actual money was paid out in Memphis or Helena, just as much as if paid over the counter at Jonestown.

Code 1892, § 1330, provides that: "When an embezzlement is committed, it may be prosecuted in the county in which the money or property, or some part thereof, was received or converted by the accused, or in the county in which he was under obligation to pay over the funds or to deliver the property." That the money was paid in another state beyond, as is said, "the jurisdiction of the court," makes no difference.

There was no error in the granting, modifying and refusing of the many instructions in this case.

This record, voluminous as it is, may possibly present some minor irregularities in the admission and exclusion of testimony, but none of these constitutes reversible error. The case extended over more than a week. It is conclusively shown that Richburger overdrew his account $14,000; that he wrecked the bank; that the pretended securities which he turned over to cover his shortage were practically worthless, and that he confessed his guilt over and over again. It would be a glaring error indeed which would warrant the court in reversing the judgment in a case where the defendant's guilt is so overwhelming on its facts. No defense is attempted—no effort made to show that defendant is not guilty. He stands in the court upon the technical insufficiency of the state's case, and he pleads in extenuation of his conduct nothing except some alleged minor errors in the court's rulings. Under these circumstances he is not entitled to any technicalities except such as may safely be said to have resulted in his prejudice.

Argued orally by *Jno. W. Cutrer* and *C. H. Alexander,* for appellant, and by *R. V. Fletcher,* attorney-general, for appellee.

THOMPSON,* Special Judge, delivered the opinion of the court.

The appellant, George Richburger, was indicted, tried, and

* WHITFIELD, chief justice, was ill and unable to preside in this cause, whereupon R. H. THOMPSON, ESQ., a member of the supreme court bar, was commissioned by the governor as special judge to preside in his place.

convicted of embezzlement, sentenced to the penitentiary for two years, and appealed to this court. The indictment against him is predicated of Ann. Code 1892, § 1058 (Code 1906, § 1136), and the specific charge was "that he, in the first district of Coahoma county, on the 23d of April, 1906, then and there being the cashier of the Jonestown Bank, a corporation chartered under the laws of the state of Mississippi, did then and there, by virtue of his employment as such cashier, have under his care, of the property of the Jonestown Bank, $8,659.59 in money, which had come into his possession and had been intrusted to his care and keeping by virtue of his said employment as such cashier, and did afterwards then and there, without the consent of said Jonestown Bank, willfully, unlawfully, fraudulently, and feloniously embezzle the same and fraudulently and feloniously converted the same to his own use."

The indictment charged a statutory offense, and the language of the statute of which it is predicated is sufficiently specific to give notice of the acts made unlawful and sufficiently exclusive to prevent its application to other acts. The case, therefore, belongs to that class in which it is sufficient to charge the offense by using only the words of the statute (*Jesse* v. *State,* 28 Miss., 100; *Sullivan* v. *State,* 67 Miss., 346, 7 South., 275); and the sufficiency of the indictment must be determined in the light of the well-established rule which justifies, in charging statutory offenses, the use of words synonymous with those used in the statute defining the crime. *Harrington* v. *State,* 54 Miss., 490; *Roberts* v. *State,* 55 Miss., 421. The indictment under consideration, in so far as its validity was brought in question in the trial court, conforms to the statute in every material particular, using its exact or synonymous words, and the court below did not err in overruling the demurrer to it. The cause of demurrer which sought to draw a distinction between a charge of having money in one's care and having it in one's possession is answered by the statute itself

(Ann. Code 1892, § 1058; Code 1906, § 1136), making it a crime for any agent, clerk, officer, etc., to embezzle money which shall have come to his "care or possession." A charge, as distinctly made in this case, that defendant had the money under his care, is sufficient, as would be a charge that he had the same in his possession.

It is unnecessary under our statutes (Ann. Code 1892, § 1364; Code 1906, § 1436), the charge being that defendant embezzled a designated sum of money, for the indictment to aver the value of the money. The charge that the defendant had embezzled $8,659.59 by its very terms fixes the amount of money charged to have been embezzled; and the words, "amount" and "value," when. applied to money, are synonymous. *State* v. *Kruttschnitt,* 4 Nev., 212; *Bartley v. State,* 53 Neb., 362, 73 N. W., 744; *State* v. *Knox,* 17 Neb., 683, 24 N. W., 382; *Gady* v. *State,* 83 Ala., 51, 3 South., 429; *State* v. *Barr,* 61 N. J. Law, 131, 38 Atl., 817; *Grant* v. *State,* 55 Ala., 201; *Duvall* v. *State,* 63 Ala., 12. In *State* v. *Stinson,* 24 N. J. Law, 9, decided in 1853, the following rules were laid down by the highest appellate court of that state touching indictments for embezzlement; the case before the court being an indictment, as here, against the cashier of a bank for embezzling its funds: (1) Where the larceny, embezzlement, or criminal conversion of any article, whether coin or security or chattel, is charged, the article should be described with reasonable certainty. (2) The value of the article should be stated, unless it be a coin of the government, in which case, the value being established by law, the courts will take notice of the value. (3) The term "dollars" is an expression of value, as well as the name of a coin, and hence the word "dollars" is uncertain as a description, since it may be used to denote a number of cents or dimes, as well as dollars proper, but is certain as an expression of value. These rules have been changed to some extent in this state, so far as concerns the larceny or embezzlement of money, by Ann. Code 1892, § 1364 (Code 1906, § 1436), making it sufficient to

describe the property in general terms as money, but are ample authority for the conclusion that the indictment in this case is not defective for failure to aver the value of the money. The case of *Merrill* v. *State,* 45 Miss., 651, is not at variance with our conclusion.

The other causes of demurrer assigned are sufficiently answered by what has already been said, and we need not make special reference to them, further than to say that it is unnecessary for the indictment to charge from whom the money under defendant's care, and which he is charged to have afterwards embezzled, was received. The statute does not so require.

An objection to the indictment, most strenuously argued in this court, is predicated of the fact that it fails to show that the appellant, in the language of the statute, was a director, agent, clerk, servant, or officer of any incorporated company, the charge being that he was the cashier of the bank; but we are precluded, the objection not being jurisdictional in its nature, from deciding the point, not made in the court below, but presented for the first time in this court, by Ann. Code 1892, § 4370 (Code 1906, § 4936), providing that a judgment in a criminal case shall not be reversed because of any error or omission in the case in the court below, except where the error or omission is jurisdictional in character, if it were not made ground of special exception in that court.

When the cause came on for trial in the court below, the defendant asked for a continuance because of the absence of one Nachman, who was without the state and had not been subpœnaed. He had been appointed by the chancery court receiver of the Jonestown Bank, whose money was charged to have been embezzled, but had resigned the receivership and surrendered to his successor the records, papers, and documents belonging to the bank which had come to his hands. The court below disallowed the application for a continuance, but required the state to admit that Nachman would testify as appellant claimed he would do, were he present. This was quite

as much as defendant had a right to demand. The affidavit upon which the continuance was asked was insufficient. It was in its nature largely an application for delay, to give defendant opportunity to make search for evidence not known to exist, and as such it deserved to be denied. *Hemingway* v. *State,* 68 Miss., 371, 8 South., 317. Nachman's presence seems to have been desired quite as much to ascertain if he knew anything as to prove any specific fact by him. It was not claimed that he had in his custody any paper or record which ever belonged to the bank, or which would throw any light whatever on the issue to be tried. The utmost showing on this point amounts to a statement that there came to his hands as receiver some papers and records—just what they were is not shown—which were not at the time of the trial in the hands of his successor. The statement in the affidavit that "defendant states further that he expects to prove by said witness that prior to the appointment of said receiver he had conveyed to said bank, or caused to be conveyed thereto, for his account, a large amount of valuable real estate and security for any indebtedness which he might owe to said bank last aforesaid—in fact, all that he possessed or owned—and that the said Nachman informed himself of the value thereof, and possessed himself thereof, for and on behalf of the said bank, and that the defendant has never received from said bank any credit therefor, or for any part thereof," does not aid the application. Assuming that the defendant made the conveyances stated, there is nothing to show but that the deeds and papers, the best evidence, were accessible, and none that the value of the land, presumably located in the county, could not be testified to by other persons whose presence could be obtained. It is to be noted that many of the securities enumerated in the affidavit were really produced on the trial; and in addition it is undoubtedly true, as said by this court in *Starling* v. *State, Ante,* 255, 43 South., 952, that, standing at the close of a completed record and looking back on a finished trial, it is manifest that re-

versible error was not committed by the circuit court in overruling the application for a continuance.

The trial of appellant had proceeded but a short time when the state offered to read in evidence the charter of the bank, to which the defendant objected on the ground that the injured party was named "Jonestown Bank" in the indictment, and the charter offered to be read was that of the "Jonestown Bank of Jonestown." Thereupon the district attorney asked leave of court to amend the indictment so as to make it read "Jonestown Bank of Jonestown." The court below, overruling the defendant's objection to the proposed amendment, granted the request of the state. The district attorney then made an amendment and announced to the court that he had done so, making the indictment read, for the name of the injured party, " Jonestown Bank, alias Jonestown Bank of Jonestown," and defendant duly excepted. It does not appear that an order of court allowing the amendment, specifying it precisely, was entered on the minutes, as required by Code 1906, § 1509, but no objection was made in the court below to the amendment on this ground. Had objection been made there, even in the motion for a new trial, the order would no doubt have been entered, as it could have been at any time, *nunc pro tunc* as of the date when the entry should have been made. The absence from the record of the minute entry cannot, therefore, be considered by this court, because of the Code provision already mentioned, Ann. Code 1892, § 4370; Code 1906, § 4936. The case of *Shurley* v. *State, Ante,* 415, 43 South., 299, decided by this court April 1, 1907, cited by appellant, is not at all in point. There the district attorney, without leave of the court, amended the indictment by erasing one name as that of the injured party and by interlineation inserted another, and special exception was taken thereto in the court below.

The variance between the indictment and the charter touching the name of the bank was immaterial, and the amendment, consequently, need not have been made; but, being made, it was

harmless, and reversible error cannot be predicated of it. *Putnam* v. *United States,* 162 U. S., 687, 16 Sup. Ct., 923, 40 L. Ed., 1118, was a case like this, where an officer of a bank was indicted for embezzling the funds of the bank. There the name of the bank as written in the indictment was "National Granite State Bank." Its charter, or real, name was "National Granite State Bank of Exeter." There the prosecutor properly treated the variance as immaterial. The defendant was convicted, and upon appeal brought the question before the supreme court of the United States, and that great tribunal, without a dissent on the proposition, said: "It is impossible . . . to suppose that the omission of the words 'of Exeter' could have in any way misled the defendant or failed to convey to his mind what bank was intended to be referred to. It was manifest, therefore, that the omission could not have operated to his prejudice." In *Rogers* v. *State,* 90 Ga., 463, 16 S. E., 205, the defendant was indicted for stealing a bale of cotton from the "Central Railroad & Banking Company," and the proof showed that the cotton was stolen from the "Central Railroad & Banking Company of Georgia." The supreme court of Georgia, per LUMPKIN, J., said: "In point of fact there can scarcely be a doubt that the accused, his counsel, the court, jury, and all others concerned knew perfectly well that the corporation to which the proof related was that to which the indictment referred. . . . Tested by the evidence, the name in the indictment is correct so far as it goes, and only lacks two words of being exactly correct. The result of their omission is simply, we think, a slight misnomer. . . . It cannot be more serious than a like misnomer in the name of an individual." The sentences quoted from the two cases last cited are as applicable to the case before us as they were to the causes in which they respectively were uttered. Two other cases of like import will be noted. In *State* v. *Hayes,* 78 Mo., 600, an indictment alleging embezzlement of "public moneys belonging to the school fund of North township," was held to have been sus-

tained by proof of embezzlement of moneys belonging to the "subdistricts of North township." In *State* v. *Smith,* 13 Kan., 274, the accused was charged before the examining magistrate with embezzling $67,000 of the funds of the county of Leavenworth, and in the information afterwards preferred against him by the prosecuting officer he was charged with embezzling $67,378.42 belonging to divers designated funds in the treasury of the county of Leavenworth. To the information defendant filed a special plea, averring that he had not had a preliminary examination—in that state at that time a necessary prerequisite to a prosecution by information—as to the embezzlement of any money belonging to any other person than the county of Leavenworth, and that he had not waived his right to such examination. The plea was held bad by the trial court, and the supreme court of Kansas adjudged that there was no error in the ruling.

Before entering upon the trial, the defendant applied to the court for an order requiring the state to furnish him a bill of particulars, and the court granted the order. The bill of particulars furnished by the state under the order proved unsatisfactory to the defendant, and he made objections to it; but the court overruled his objections, and this is assigned as error. It was in the discretion of the trial court to grant or deny the application for a bill of particulars; and, in the absence of gross abuse of that discretion, this court will not reverse a conviction because of the action of the lower court upon the subject. 1 Bishop on Criminal Procedure (Ed. 1866), § 286; 3 Ency. Pl. & Pr., 524. Of course, if this court would not reverse for a refusal to order a bill of particulars, it will not do so because of exceptions taken to one which had been rendered. In this case, it may further be said, after the introduction of its testimony in chief, the state was required to elect upon which items of the charges supported by the evidence it would base its demand for a conviction, and it elected two items, definitely designated, of the same date, thereby removing all probability

of the defendant having been prejudiced by the refusal of the court below to require the bill of particulars to be made more certain. Nor was defendant prejudiced by the fact that the state was allowed to elect two items of the charges made by the evidence upon which to press for a conviction, since in respect to the smaller of said items, the one for $12.75, or, as sometimes mentioned in the record, for $22.75, the testimony so far fails that no reasonable person could believe the conviction was based upon it. Its election by the state was necessarily harmless, and the judgment appealed from must stand, if it can be supported at all, upon the sufficiency of the evidence to support a conviction predicated of the other, or $500, item, also elected by the state.

The seventh, eighth, ninth, and fifteenth assignments of error, and the seventh, ninth, twenty-third, and twenty-seventh grounds of the motion for a new trial are each and all predicated of rulings adverse to appellant made in the course of the trial on the admission or rejection of evidence; but there is no specification of the particular rulings complained of in the motion for a new trial, save in the twenty-seventh ground, where the testimony therein referred to is specially designated.

If it be conceded that this court is under duty—by no means true—to search throughout lengthy records like the one in this case, containing a great number of closely and badly typewritten pages, and to detect and decide upon every ruling touching the evidence made by the court below, yet nothing is better settled than that the circuit court, on the hearing of a motion for a new trial, is under duty to consider only the reasons therefor assigned in writing. Code 1892, § 739; Code 1906, § 801; *Barney* v. *Scherling,* 40 Miss., 320; *Armstrong* v. *Whitehead,* 81 Miss., 35, 32 South., 917, and the authorities quoted in the opinion in that case. Thompson, in the first volume of his work on Trials (section 709), speaking of motions for new trials, says: "A general complaint that the court erred in admitting illegal, incompetent, and irrelevant evidence, or in

refusing to admit legal, proper, and relevant evidence, does not direct the mind of the court to the errors complained of, and such a motion is properly overruled for that reason alone." The supreme court of Rhode Island, in *Barrows* v. *Keene,* 15 R. I., 484, 8 Atl., 713, speaking of the requisites of an application for a new trial, called there a "petition," says: "Of course, we do not mean that the petition ought to have reported the testimony in full; for such a report might unnecessarily cumber the files of the court, and might be censurable for another reason, namely, that it might oblige the court to go through a heap of testimony, much of it irrelevant, to find and sort out that which is pertinent. This is a labor which properly belongs to the petitioner's counsel. A petition like this ought to state the testimony, or its purport, with such fullness as will show the nature of the case, and bring out clearly the points on which the rulings were given or refused, so that the court may see whether any error was committed which calls for correction." While the Rhode Island practice is different from ours, and while we do not adopt the sentence above quoted in full, we do adjudge it to be altogether improper for counsel to impose upon the courts labor which properly belongs to themselves, and a motion for a new trial on the ground of erroneous rulings in the admission or rejection of evidence should designate each of the particular rulings complained of, and make such specific reference to the evidence as will clearly suffice to draw the mind of the trial judge to the consideration and review of the exact rulings, sought to be questioned; and, if the motion for a new trial fail to do so, this court will not on appeal reverse because of any ruling on the evidence made by the trial court, since it cannot be known with certainty in such case that the question involved was brought to the attention of the court below in the motion for a new trial.

In *Gate City Gaslight Company* v. *Farley,* 95 Ga., 796, 23 S. E., 119, the following grounds in a motion for a new trial were adjudged to be so vague, general, and indefinite as not to

indicate the errors alleged to have been committed, viz.: "Because the court erred, in that the court illegally withheld from the jury material evidence against the demand of the defendant." "Because of the illegal admission of material evidence to the jury against the demand of the defendant." Contrast with these grounds, condemned by the Georgia supreme court, the following from this record, viz.: "(7) Because the court erred in admitting incompetent evidence for the state over the objections and exceptions by the defendant." "(9) Because the court erred in excluding competent evidence offered by the defendant." These grounds for a new trial fall within the condemnation of the Georgia court, and within our condemnation. This court might hunt through the stenographer's report of the evidence, and find every instance where rulings adverse to the appellant were made in the progress of the introduction of the evidence; but we cannot by so doing find assurance that any particular ruling was brought into review by the motion for a new trial, and the trial judge thereby given an opportunity to correct the error, if any, made by him. He did not have the stenographer's report of the evidence before him. That was filed and made a part of the record many days after the motion for a new trial had been heard and denied. Many authorities hold that a motion for a new trial, which refers to the evidence as contained in the bill of exceptions or other writing not filed when the motion was acted upon, although filed thereafter, presents no question concerning the evidence, as it is too indefinite. *Noble* v. *Dickson,* 48 Ind., 171; *McCammack* v. *McCammack,* 86 Ind., 387; *Arbuckle* v. *Biederman,* 94 Ind., 168; *Harvey* v. *Huston,* 94 Ind., 527; *Cain* v. *Goda,* 94 Ind., 555. We cannot tell from this record that the attention of the trial judge was directed on the motion for a new trial to any particular piece of evidence upon which he ruled during the trial, save that specified in the twenty-seventh ground for a new trial. The supreme court of Connecticut in *Hoey* v. *Hoey,* 36 Conn., 386, said: "A motion [for a new trial] of itself must show clearly

what the error is which is claimed to have been committed by the court, and the court is not bound to help it out by any favorable construction or supposition." In *Rooney* v. *Grant,* 40 Ga., 191, a motion for a new trial was adjudged to have been properly overruled, because it did not assign special grounds upon which a new trial was claimed; and in *Cox* v. *Weems,* 64 Ga., 164, a motion for a new trial was adjudged too vague to support an assignment of error.

Proceeding to decide the question presented by the twenty-seventh ground for a new trial, wherein it is distinctly specified that the court erred in permitting two witnesses, Hyman and Longino, to testify as to alleged confessions said to have been made by defendant, we are of the opinion that the statements of defendants testified to by the witnesses were admissions against interest, rather than confessions of crime, and that they were admissible; but, if they be treated as confessions, they were voluntary, and the court below did not err in allowing them to be given in evidence.

The defendant requested a peremptory instruction in his favor, but the court below refused to give it, and this is assigned as error. The appellant claims that it should have been given, because he was indicted for embezzling a designated sum of money, and not a general balance of account, or checks, or credits; that the state had elected to demand a conviction upon one or both of two specified transactions, both dated in December, 1905, and that, all the facts testified about each and both of them being admitted to be true, there was nothing to prove or which tended to prove that defendant had embezzled money; that the testimony touching one of these transactions did not tend to show wrongdoing of any kind, and the evidence in respect to the other could only be said to show, or tend to show, a misappropriation to the extent of $500 of a credit due from a bank in Memphis to the Jonestown Bank, and that a misappropriation of a credit is not the same thing as embezzling money. The facts, as the jury were justified in finding, in re-

gard to the transaction upon which appellant's conviction must be upheld, if at all, are these: The Jonestown Bank, of which defendant was the cashier, was on December 2, 1905, financially in a failing condition, and he knew it was not in a position to make him a loan of $500. His account was greatly overdrawn, and he owed the bank so largely that he necessarily knew that, were the bank unembarrassed, a reasonably prudent officer, in the absence of payment of or security for the existing debt, would have refused to make a loan to him. Nevertheless, being in Memphis, Tenn., the defendant on that day drew his check on the Jonestown Bank in favor of the Conaulk Millinery Company for $500, and presumably, since the check was collected, paid the company that much money. The millinery company indorsed the check to the North Memphis Savings Bank, which deposited it, on or before December 5, 1905, in the Bank of Commerce & Trust Company, of Memphis, Tenn. The Bank of Commerce & Trust Company indorsed it for collection to the American Express Company, and that company presented it to the Jonestown Bank on December 8, 1905, and at the same time presented to the bank for collection one or more other checks drawn on it, and which the express company held for collection for the Bank of Commerce & Trust Company. The defendant had returned to Jonestown before his check reached there, and was present in the bank when it with those accompanying it, all aggregating $1,114.58, was presented to the bank for payment. The financial condition of the bank had not improved between December 2, when appellant's check was drawn, and December 8, when it was, along with others, presented for payment. The bank did not pay them in money, but gave the American Express Company, appellant executing the same, its check on the Union & Planters' Bank of Memphis, Tenn., for $1,114.58, the aggregate of the several collections, including $500, the amount of defendant's check to the millinery company, payable to the Bank of Commerce & Trust Company, of Memphis, in whose favor the several collections were

to be made by the express company. This $1,114.58 check was presented to the Union & Planters' Bank of Memphis, where the Jonestown Bank had funds on deposit, and was paid; and $500 of the sum went to the use and benefit of defendant and in satisfaction of his check to the millinery company.

Do the facts stated and the inferences which the jury were justified in drawing therefrom, aside from the question of venue, warrant the conviction of defendant for embezzling money? *United States* v. *Royer,* 122 Fed., 844, is a case where the defendant, a clerk in a branch money order post office of San Francisco, was indicted and charged with having embezzled $1,240.55, lawful money intrusted to his care and keeping as such clerk, a part of the money order funds of the United States. It was shown upon his trial that he had issued to his own creditors a number of post-office money orders aggregating said sum on various post offices in the government, without receiving any money for them, and that these orders had been collected by the payees named in them or their assignees. It was contended for the defendant that the money paid out on the money orders by other post offices was never "under the care and keeping" of the defendant; that defendant never had or saw the money, and therefore was not guilty of embezzlement. DE HAVEN, District Judge, thought it too clear for argument that funds payable upon money orders drawn by the postmaster or clerk having authority to issue the same in the regular course of his official duty may be deemed to be intrusted to such postmaster or clerk in the sense that, if wrongfully converted by him to his own use, he is guilty of the crime of embezzlement; that such funds are in fact subject to his official order—that is, they are set apart by the government for the payment of money orders issued by him, and are thus intrusted to his official care, although they may not be in his official custody. The case of *Calkins* v. *State,* 18 Ohio St., 366, 98 Am. Dec., 121, is directly in point. The defendant in that case was indicted under a statute which made it an

offense for a clerk or servant to embezzle property belonging to any other person, and coming into his possession or under his care by virtue of such employment. The indictment in that case charged the defendant with the embezzlement of wheat belonging to a railroad company by which he was employed as a clerk. It appeared on the trial that the railroad company had a grain elevator in which all grain arriving at Toledo by way of its road was stored, and in the transaction of this business an account was kept of each consignment of grain received. This account was kept by the defendant, and he was also authorized to issue to the owners or consignees of the grain thus stored a writing called a "grain order," and to subscribe thereto the name of the general agent of the company, and upon presentation of such order to issue a shipping order to the holder. The court in that case said: "Such being the duties and powers of Calkins under his employment, the evidence further shows very satisfactorily that while so employed he clandestinely issued fictitious grain orders, caused them to be sold in market, and appropriated the proceeds of the sale to his own use, and that he subsequently issued shipping orders based upon the fictitious grain orders, which resulted in the delivery by the company of the amount of grain named in them to the holders. On this state of proof it was claimed on behalf of the prisoner that the wheat in the warehouse, and alleged to have been embezzled, was not 'under his care,' and that no wheat passed from the warehouse into his possession. The court below held otherwise, and this is assigned for error. We are of opinion that the court below did not err in its holding on these points. There is no more reason why courts should allow themselves to be misled by mere names and shadows in the administration of justice in criminal than in civil cases. Calkins, under and by virtue of his employment, had the wheat in the warehouse of his employers so far under his care and possession and control as to give him the power to make an efficient transfer of title to any part of it to any person who should become the *bona fide*

purchaser of a grain order issued by him in the name of Baldwin, a transfer of title effective in favor of the holder of such order and against his employers. The power was used to divest his employers of their property and to put the proceeds of it into his own pocket. We think he had all the care of the property which the statute contemplates, and that when he clandestinely transferred the title of wheat from the railroad company to an innocent holder of a grain order, and appropriated the proceeds thereof to his own use, the act of embezzlement was complete."

These cases are decidedly pertinent to the question under consideration, and a careful consideration of them leads us to add the approval of this court to the reasoning upon which they are based. The key to them is to be found in the language of the supreme court of Ohio in *Calkins* v. *State, supra,* upon which too much emphasis cannot well be put. The court said: "There is no more reason why courts should allow themselves to be misled by mere names and shadows in the administration of justice in criminal than in civil cases." The federal court case was, of course, decided in recognition of the fact that every money order post office in the United States upon which the defendant was authorized to issue money orders does not have on hand at all times funds specially set aside with which to pay such orders, since it is a matter of common knowledge that the cashing of money orders, especially at the smaller offices, is occasionally deferred, when first presented for payment, until the incoming of funds with which to take them up. The defendant in that case would have been guilty, had each of the money orders drawn by him been drawn on a post office not having on hand at the time the order was drawn, or when it was presented for payment, one cent with which to take it up, if they were paid at any time after they were first presented. The case was correctly decided, not so much because the defendant was authorized to draw upon specific funds belonging to the government as because he constituted the payees, in the

money orders his agents to receive government funds, and enabled them to obtain possession of such funds and to appropriate the same to his benefit, the acquittance of himself from the debts previously due them. The funds, when paid over to the payees on the fraudulent orders issued by defendant, were no more rightfully in their possession than if defendant had furtively reached his arm into the government's places of deposit in the post offices on which the orders were drawn and had extracted the money and paid it over to the payees, and the funds remained the funds of the government, and the money itself was embezzled by defendant when it was appropriated by the payees, being thereunto authorized by him. The Ohio case is supported by like reasoning.

In the case at bar it makes no difference that the Jonestown Bank did not have a special deposit in the Union & Planters' Bank of Memphis, set apart only to be used in cashing its drafts, or that its deposit was a general one, creating between them the relation of debtor and creditor. Had defendant drawn the $1,114.58 check (including, as it did, the $500 aforementioned), payable to bearer, or to his order, and had himself gone to Memphis and presented it for payment to the bank upon which it was drawn, that bank would have separated from its funds the necessary sum of money with which to pay it, and would have paid it on the order of the Jonestown Bank; and when defendant so received the money, $500 of it being paid to him, on the facts as established by the verdict, by reason of his fraud, whose money would the $500 have been? Unquestionably it would have been money which defendant in equity and good conscience should have treated as the money of the Jonestown Bank, and he should have delivered it to the bank. Failing to do so, and converting it to his own use, he unquestionably would be guilty of embezzling the money of the Jonestown Bank. It makes no difference that defendant did not himself go to Memphis and personally collect the check of the Jonestown Bank, which he had in part, and to the extent of

$500, as found by the jury, fraudulently drawn on the Union & Planters' Bank. He constituted the payee in that check his agent to collect the money, and the same was collected to the extent of $500 for his benefit and appropriated for his own use. The facts of the case and the legitimate inferences to be drawn from them justified the jury in finding the defendant guilty of embezzling $500 of the bank's money, and the court below did not err in refusing the peremptory instruction asked by the defendant.

We are unable to recognize the force of the suggestion made by appellant's counsel to the effect that the conviction cannot stand because of deposits made by defendant in the bank at various times, and especially the one for $504 made December 4, 1905, after he had drawn the check for $500 in favor of the millinery company, but before it was taken up at the bank. The deposit, as all others made by him, was made generally, and not as a special one, to be used in paying the check in favor of the millinery company; and in the absence of any showing to the contrary the jury were warranted in treating the rule for the appropriation of payments in civil cases as applicable, and the state of the evidence is such as to support the finding that defendant did not provide in any way for the payment of the check found to have been fraudulently issued by him.

The question of venue is raised, and defendant's counsel insist that the statute (Code 1892, § 1330; Code 1906, § 1402), providing that embezzlement may be prosecuted in the county in which the defendant was under obligation to pay over the funds is both inapplicable and unconstitutional. We do not pass upon the questions thus presented, because we think the case is within Code 1892, §§ 1132, 1133 (Code 1906, §§ 1404, 1405)—the first one providing that where an offense is committed out of this state and consummated in it, or where an offense is consummated in this state by means or agency proceeding from a person out of this state, the person so commencing such offense or putting in operation such means

or agency, although out of the state at the time such offense was actually consummated, shall be liable to indictment and punishment therefor in the county in which the offense was consummated; and the other providing that where an offense is commenced in this state and consummated out of it, either directly by the accused or by any means or agency procured by or proceeding from him, he may be indicted and tried in the county in which such offense was commenced or from which such means or agency proceeded. Of course, under these statutes, it is quite immaterial, so far as concerns venue, whether we regard the offense as having been begun in Tennessee and consummated in this state, or begun here and consummated there.

Another assignment of error is based upon improper argument to the jury by one of the prosecuting attorneys. It is the duty of trial judges to give attention to the argument of counsel in every case, especially in criminal cases where the temptation to exceed proper limits seems to be great, and, with or without objection, to exercise the power in them vested to see that the trial is fair and impartial, and the argument of counsel is a part of the trial. Defendants are often loath to object to argument which they know to be improper, for fear so doing will be misunderstood or misconstrued by the jury; and the trial court should not hesitate, of its own motion, to prevent all abuses of the right to argue a cause to the jury. Right-thinking counsel will welcome a suggestion from the court in the way of admonition that they are dangerously near or over the line which separates the proper from the improper, and will cheerfully conform to the right All others, if there be others, should be made to respect the rights of even the humblest individual, although charged with crime. In this case, however, we cannot consider the assignment of error, because the objection was not made to the improper statements of counsel at the time they were made, or at any time before verdict.

The court below did not commit reversible error either in

giving instructions for the state or in refusing or modifying those asked by defendant. Considered as a whole, the instructions were not misleading and they fairly presented the law of the case.

The assignments of error not otherwise mentioned herein are without merit.

*Affirmed.*