ODOM *v.* STATE.

In Banc. Nov. 8, 1948.

(37 So. (2d) 300)

**Morse & Morse,** and **G. B. Keaton,** for appellant.

574

**R. O. Arrington**, Assistant Attorney General, for appellee.

**McGehee, C. J.**

The principal question presented for decision on this appeal is whether or not the trial court was required to furnish, or offer to furnish, an attorney to represent the accused Riley Odom upon his trial on the non-capital felony charge of having committed the crime of burglary, for which he was convicted and sentenced to the state penitentiary for a term of three years.

Unless the trial court owed the above mentioned duty to the accused, in the absence of a request for an attorney or showing of inability to employ one, in order to comply with the requirements of the Federal Constitution or with the Constitution and laws of this State, then the failure of the court to exclude the defendant's confessions of the

alleged crime is not reversible error in the absence of any objection to the introduction thereof as free and voluntary confessions.

We are asked to reverse the case on only the two alleged errors mentioned in the last preceding paragraph, the evidence being ample to sustain the conviction of the accused if the confessions were properly admitted in evidence. Moreover, unless the accused was deprived of a constitutional right by the failure of the trial court to furnish, or offer to furnish, an attorney to defend him, we would not reach the question as to whether the confessions were properly admitted for the reason that the trial court can not be put in error for admitting a confession of guilt where it is done without objection on the part of the defendant during his trial, unless the same is manifestly given under duress or is obviously untrue.

As to whether or not the trial of the appellant on a noncapital felony charge without the assistance of an attorney for the presentation of his defense was a denial of due process of law, we shall discuss, first, the question of whether the Constitution and laws of this State were thereby violated, and, second, whether there was a violation of the Sixth Amendment to the Federal Constitution or the due process clause of the Fourteenth Amendment thereto.

Article 3, Section 14, of our State Constitution provides that "No person shall be deprived of life, liberty, or property except by due process of law", and the Legislature has prescribed what shall constitute due process of law under our State Constitution in regard to the circumstances under which an attorney shall be appointed to defend one charged with a violation of the state law. Section 2505, Code 1942, provides in part, ". . . Where any person is in jail charged with a capital crime, or is indicted for such crime, *and the court being first satisfied that such person is unable to employ counsel,* such person shall be allowed counsel not exceeding two, to be chosen for him by the judge in vacation or by the

court, to defend him in the circuit court, upon the trial of such charge, . . ." (Italics ours.)

And the Supreme Court of this State in the case of Reed v. State, 143 Miss. 686, 109 So. 715, wherein the accused was convicted of a non-capital felony, said: "It is not the law that the state must furnish counsel to persons charged with crime, except in capital cases. In all other cases the defendant must procure counsel or act for himself in his trial. The court has no power to employ counsel to be furnished him." Of course, this holding to the effect that the Court has no power to employ counsel in such a case means that no such power is conferred or required to be exercised by either the Constitution or laws of the State.

 Then, too, in the case of Caldwell v. State, 176 Miss. 80, 167 So. 779, this Court held:

"The Sixth Amendment to the Federal Constitution provides that in all criminal prosecutions the accused shall have the right to a speedy public trial, by an impartial jury of the state and district wherein the crime was committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation, to be confronted with the witnesses against him, and to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense. The amendment has no application to state action; it is not a limitation of the powers of the states, and it is confined alone to federal action. Eilenbecker v. District Court of Plymouth County, 134 U. S. 31, 10 S Ct. 424, 33 L. Ed. 801; Ughbanks v. Armstrong, 208 U. S. 481, 28 S. Ct. 372, 52 L. Ed. 582; Howard v. [Commonwealth of] Kentucky, 200 U. S. 164, 26 S. Ct. 189, 50 L. Ed. 421." ·

Therefore, it will be seen that according to the previous decisions of this court there was no failure to comply with any state statute nor with any requirement of our State Constitution. Also that under the Caldwell case there was no violation of the Sixth Amendment to the

Constitution of the United States as interpreted by our State Supreme Court.

Passing then to the question of whether or not there was a violation of either the Sixth Amendment of the Federal Constitution or the due process clause of the Fourteenth Amendment thereto, according to the decisions of the Supreme Court of the United States, we find that the principle announced in the Caldwell case was in effect upheld and reaffirmed in the case of Betts v. Brady, 316 U. S. 455, 62 S. Ct. 1252, 86 L. Ed. 1595, when the Supreme Court of the United States declared that the provision of the Sixth Amendment of the Federal Constitution, giving to an accused in a criminal prosecution the right to have the assistance of counsel for his defense, applies only to trials in the Federal courts.

And again that Court held as late as April 19, 1948, in the case of Roy Bute v. People of the State of Illinois, 333 U. S. 640, 68 S. Ct. 763, 766, 92 L. Ed. — that the due process clause of the Fourteenth Amendment to the Federal Constitution would not of its own force require a tender of the assistance of counsel to one charged in a state court with a non-capital crime, and stated that since the circumstances of that particular case were not such as to make such tender essential to due process the defendant had been lawfully convicted without the benefit of counsel. The Court commented that the record before it in the Bute case ''does not show that the court inquired as to the petitioner's desire to be represented by counsel, or his ability to procure counsel, or his desire to have counsel assigned to him to assist him in his defense, or that such counsel was offered or assigned to him. We hold that such a silence in the respective records does not suffice to invalidate the sentences. We hold further that, in the absence of any showing beyond that in these records, the due process clause of the Fourteenth Amendment did not require the Illinois court to make

the inquiries or the offer or assignment of counsel now claimed to have been the right of the petitioner.''

Such was ''the law of the land'' on April 30th, 1948, when this appellant was convicted of the crime of burglary. The opinion in the Bute case is well reasoned and is abundantly supported by all previous federal decisions. The conclusion therein reached was also required by a recognition of the Tenth Amendment to the Federal Constitution. The opinion declares that ''One of the major contributions to the science of government that was made by the Constitution of the United States was its division of powers between the states and the Federal Government. The compromise between state rights and those of a central government was fully considered in securing the ratification of the Constitution in 1787 and 1788. It was emphasized in the 'Bill of Rights,' ratified in 1791.'' The decision upholds the principle that ''there has been no change that has taken from the states their underlying control over their local police powers and state court procedures. They (the states) retained this control from the beginning and, in some states, local control of these matters long antedated the Constitution. The states and the people still are the repositories of the 'powers not delegated to the United States by the Constitution, nor prohibited by it to the States, . . .' The underlying control over the procedure in any state court, dealing with distinctly local offenses such as those here involved, consequently remains in the state. The differing needs and customs of the respective states and even of the respective communities within each state emphasize the principle that familiarity with, and complete understanding of, local characteristics, customs and standards are foundation stones of successful self-government. Local processes of law are an essential part of any government conducted by the people.''

In other words, the principle of State's rights as guaranteed by the Federal Constitution was ably discussed and fully upheld in the controlling opinion in the

Bute case rendered on April 19, 1948, within less than two weeks prior to the appellant's conviction.

But on June 14, 1948, the case of Wade v. Mayo, Custodian of the State Prison of Florida, 334 U. S. 672, 68 S. Ct. 1270, was decided by the Supreme Court of the United States on appeal from the Circuit Court of Appeals for the Fifth Circuit, 158 F. 2d 614, involving a habeas corpus proceeding in the Federal Court, and wherein it was shown without dispute that the petitioner, who was 18 years old, had asked the trial judge in the State court, before his trial on a charge of burglary had started, to appoint counsel to represent him, claiming that it was financially impossible for him to employ one himself. The Court said that [334 U. S. 672, 68 S. Ct. 1276] ''The denial of petitioner's request in the circumstances here involved constitutes a denial of due process, contrary to the 14th Amendment of the Federal Constitution, . . .'' The opinion in that case noted that district court had found as a fact at the habeas corpus hearing that the petitioner Wade ''was an inexperienced youth incapable of adequately representing himself even in a trial which apparently involved no complicated legal questions. This is a judgment which is peculiarly within the province of the trier of facts, based upon personal observation of Wade. And we do not find that the District Court's determination was clearly erroneous. . . . Where such incapacity is present, the refusal to appoint counsel is a denial of due process of law under the Fourteenth Amendment.''

But assuming that there may be cases to arise where it is conceivable that because of the immaturity of a defendant, his financial inability has been made known to the Court and a request made that he be furnished such assistance, and where because of the nature of the charge and the complicated facts and circumstances connected therewith the assistance of an attorney is necessary, a state court may be justified in reversing and remanding a non-capital case for a new trial upon the theory that

the accused has been deprived of his liberty without due process of law, such is not the case now before us.

In the·instant case the record is silent as to whether or not the accused Riley Odom was unable to employ an attorney to defend him, or that he requested the trial judge to provide him with an attorney to assist in his defense. He is shown by the record to have been engaged at the time in a taxi business and there is no intimation that he was financially unable to employ an attorney to represent him if he had so desired. Moreover, he was charged with having participated in the burglary of a cafe on the main street of his local town at some time after 10:30 or 11:00 o'clock on a certain night and his defense was an alibi. He was 54 years of age at the time of the trial, and his own testimony and his questioning of the other witnesses clearly indicated his appreciation of what needed to be developed on cross examination of the State's witnesses and in his examination of those introduced in his own behalf.

The testimony given by the defendant and his witnesses at the trial would have, if believed by the jury, fully and completely established his defense of an alibi when the cafe building was burglarized, whereas, on the other hand, the two confessions of guilt made by the accused, one while in custody and the other after being released on bail, are sufficient to have warranted a jury in convicting him as being guilty beyond every reasonable doubt, if the said confessions were competent as evidence against him.

A preliminary inquiry was held by the trial judge in the absence of the jury to ascertain whether or not the confessions had been freely and voluntarily made in each instance. During these two inquiries the accused was advised by the court of his right to interrogate the officers in regard thereto, but he said he did not care to ask any questions as to the confession, and then when they were offered in evidence before the jury he made no objection thereto, although he did then cross-examine

the witnesses who had taken the same, and the testimony as a whole before the jury presented a disputed issue of fact as to whether the confessions were free and voluntary.

The first of the confessions showed affirmatively on its face that before the accused related all the facts and circumstances in connection with the burglary, the carrying away of an iron safe which contained several hundred dollars, etc., and which was found several miles away near a creek bank where he had stated that they put it, he was asked this question, "Riley, why don't you go ahead and get this off your chest like the other two did, or the job will all be pinned on you?" But the officer testified that aside from the above question, and on the whole, the confession was free and voluntary in that no promise of leniency or other inducements were held out to render the same involuntary.

The second confession was made after the defendant was released from custody and was made to a detective from New Orleans who was endeavoring to ascertain whether or not there was any connection between this particular burglary and some others which had been committed in his own city. There is no testimony in the record other than that this confession was freely and voluntarily made, after the accused had been released from custody under bond as hereinbefore stated. We are, therefore, of the opinion that the facts and circumstances of this case are not such as to have made it necessary for the trial court, as an essential to due process of law, to have offered to furnish the accused an attorney to defend him, and that this is especially true in view of the fact that the record neither shows that the court was requested to do so nor that the accused was unable to employ counsel.

Moreover, the decision in the Bute case appears to be thoroughly sound and is sustained by all former precedents as of the time the case now before us was tried, and gives proper recognition to the Tenth Amendment

to the Federal Constitution. Hence we are of the opinion that the trial judge correctly applied the law as it then existed; and that the present case is distinguishable from the more recent case of Wade v. Mayo, supra, for the reasons hereinbefore stated.

Then, too, since we are an intermediate court on the federal constitutional question here involved, we have concluded to affirm the conviction had in the trial court for the reason that in our opinion there is no constitutional provision that would either require or warrant us in doing otherwise. And, also because, ordinarily, if we should reverse and remand such a case there would be no further steps that could be taken by the trial court, since he is without authority to require an attorney to defend free of charge one charged with a non-capital felony, and there is no provision of law for the payment of a free by the state or county in that behalf. It is not for us to finally say that all prosecutions in non-capital felony cases must be suspended until the legislature provides for a public defender in each case or authorizes the expenditure of public funds for the employment of private counsel. In other words, if the "underlying control over their local police powers and state court procedures", which the opinion in the Bute case, supra, says was retained by the States from the beginning, is to now be taken from the State contrary to the Tenth Amendment to the Constitution of the United States, we prefer that the responsibility for doing so shall not rest upon us.

The judgment and sentence appealed from will, therefore, be affirmed.

Affirmed.