MILLER v. STATE.

In Banc.   June 13, 1949.

No. 37096.   (41 So. (2d) 375).

**L. J. Broadway,** for appellant.

**George H. Ethridge**, Assistant Attorney General, for appellee.

.Smith, J.

This is a habeas corpus action whereby LeRoy Miller, the relator, sought a judgment of the circuit judge of Monroe County, ''releasing petitioner from the custody of respondent and discharging him from confinement'' in the state penitentiary, of which respondent, Wiggins, was and is warden. The cause before us is the consolidation of two separate cases, agreed to be heard together, since they present the same evidence and same issues of law. They were brought in Monroe County instead of Sunflower County, wherein petitioner was and is imprisoned, for good cause shown in the petition. Section 2819, Code 1942.

Respondent answered in each case that he held petitioner by virtue of the authority of commitments from the circuit court of Monroe County, exhibiting same.

At the February term, 1947, of the Circuit Court of Monroe County two indictments were returned against appellant. In one he was charged with burglary with intent to commit larceny; in the other, with burglary with intent to commit rape. He plead guilty to both accusations, and on each was sentenced to a term of ten years in the state penitentiary, where he was confined at the time of the trial, in the cases at bar, consolidated for review here. His complaint is that the judgments of the lower court, following his pleas of guilty, are void, because in violation of the State and Federal Constitutions, Amendment No. 14, since he was denied due process of law.

The petitions alleged that appellant was an ignorant, uneducated Negro, of less than normal intelligence, twenty-two years of age; and that his confessions in the two cases were extorted from him by beating with a policeman's blackjack, threats against his life, and misrepresentation. Furthermore, he alleges that he was kept incommunicado, no attorney or member of his family were present when he made either his oral or written confes-

sions, and members of his family were not permitted to visit him in jail. He also charges that when he was arraigned, he was unfamiliar with courts, had no attorney to advise him of his rights, and plead guilty because he knew nothing else to do. And that the court failed to appoint him an attorney, neither he nor his family being able to employ one. Appellant's evidence was along the line of his allegations in his petitions.

The State's witnesses, Mayor of Amory, Chief of Police of that city, policemen, deputy sheriffs, and private citizens all testified that he was not beaten, was not threatened, no misrepresentations were made to him, and no promises were held out to him, and that his confessions were free and voluntary, and that he fully understood what he was doing and saying. The officers sent word to appellant's mother, the night of the arrest, who said she did not visit him because she had no money, her daughter had been denied visitation, and also that she had nothing to do with it. The State's evidence also showed that appellant never requested a lawyer, or for his folks to come to see him. The jailer at Aberdeen had rules, like any other well-regulated such institution, and one of them set aside Wednesday as "Visitor's Day." But appellant's sister called on Sunday, and, of course, was refused ingress into the jail to see her brother; however, she was directed to talk to him through the window, which she did without hindrance. According to the State's witnesses neither woman, mother nor daughter, sought to see him before he plead guilty. They said they had no money to hire an attorney, and he said he did not.

When arraigned, the indictments were read and explained to him, and he understood them, stating he would plead guilty. He was asked if he had a lawyer, and replied he did not. He never requested the court to assign one to his defense, and never informed the court of his inability to hire one. The judge stated he had observed him on the witness stand and he was of fair, average intelligence.

The evidence was sharply conflicting, and decided by the circuit judge, after a most fair hearing, against appellant, whose petitions for writs of habeas corpus were in consequence denied. We will not disturb his judgment on the facts because not manifestly wrong. Green v. Pearson, 145 Miss. 23, 110 So. 862.

Furthermore, the Supreme Court of the United States, in Bute v. Illinois, 333 U. S. 640, 68 S. Ct. 763, 92 L. Ed. 986, that: "In reviewing a conviction of crime, doubts should be resolved in favor of the integrity, competence, and proper performance of their official duties by the judge and state attorney."

Section 2816, Code 1942, provides that right to a writ of habeas corpus shall not apply to "any person suffering imprisonment under lawful judgment." This leads to the question, were the judgments here lawful? Appellant relies on several decisions of the United States Supreme Court, but especially on the case of Wade v. Mayo, 334 U. S. 672, 68 S. Ct. 1270, 92 L. Ed. 1647, easily distinguishable from the case at bar. We call attention to the fact that in the Wade case, the prisoner was only eighteen years of age compared to twenty-two years of appellant, also likewise claimed unfamiliarity with courts although convicted of a prior offense, as was the case in the matter before us. Moreover, in open court, before the trial commenced, Wade requested the court to appoint an attorney for him, which the court refused to do. That was a felony case, but not capital, just as here. No such request by appellant or refusal by the judge is in the case at bar.

The State relied on Odom v. State, Miss., 37 So. (2d) 300, not yet reported in State Reports, and Bute v. People of the State of Illinois, 333 U. S. 640, 68 S. Ct. 763, 92 L. Ed. 986. We are sending down simultaneously with this opinion another in a case styled Moore v. State, 41 So. (2d) 368, involving the discussion of Federal cases. In the case of Lee v. State, Miss., 39 So. (2d) 868, not yet reported in State Reports, we quoted from Lisenba v. Peo-

ple of State of California, 314 U. S. 219, 62 S. Ct. 280, 291, 86 L. Ed. 166 as follows: ''In such a case we accept the determination of the triers of fact unless it is so lacking in support in the evidence that to give it effect would work that fundamental unfairness which is at war with due process.''

We think the cases just cited control here and sustain and justify the judgment of the circuit judge denying the writs.

As for the contention that attorneys for a suspect must be present in order that the validity of his confession be upheld, we would like to inquire who is to obtain such counsel? The case is not yet under indictment, and hence the judge cannot do so, no matter how indigent the suspect may be. Certainly no sheriff or policeman has the authority to hie himself forth and commandeer or conscript an attorney for such purpose.

Frequently, suspects are arrested under an alias, and refuse to give their right names, and families cannot be located. Members of a suspect's family sometimes wash their hands of him or her, as the case may be, just as the mother of appellant here said that one reason she did not visit her son was that she had nothing to do with it. The ▮▮ courts should jealously guard the Constitutional rights of individuals, even suspected or actual criminals, but society has some Constitutional rights also. In protection of individual rights courts should not strain themselves into hypercritical condemnation of reasonable and time-tried police methods in discharge of their duties, by police officers, seeking to protect the peace and safety of law-abiding people against anti-social characters.

In accordance with our views above, the judgments of the trial judge, denying the writs, will be and are affirmed.

Affirmed.