# WEXLER *v.* STATE.

(En Banc. June 6, 1932. Suggestion of Error Overruled, June 27, 1932.)

[142 So.. 501.   No. 30024.]

**F. B. Collins,** of Laurel, and **Watkins, Watkins & Eager,** of Jackson, for appellant.

**W. D. Conn, Jr.,** Assistant Attorney-General, for the state.

Alexander Currie, District Attorney, of Hattiesburg, for the state.

**Anderson, J.,** delivered the opinion of the court.

Appellant, a white man, and Andrew Prince, a negro, were jointly indicted in the circuit court of Forrest county for the murder of J. L. Odom. There was a severance and each tried separately. Andrew Prince was first tried, convicted, and sentenced to be hanged. The appellant was then tried, convicted, and sentenced to be hanged, from which judgment he prosecutes this appeal.

This case is unusual in at least one respect, there was no conflict whatever in the evidence as to appellant's guilt. Every fact and circumstance given in evidence pointed unerringly to his guilt. Appellant did not testify and offered no evidence. In brief, the facts were these: The deceased, J. L. Odom, conducted the Standard Oil filling station at the corner of Hardy street and Eleventh avenue in the city of Hattiesburg. Between seven and eight o'clock on the night of December 9, 1931, the negro, Andrew Prince, armed with a pistol, went to the filling station conducted by Odom, there he found Odom alone, and commanded him to throw up his hands, which Odom refused to promptly do, whereupon Prince shot him to death, robbed the cash drawer of the filling station, taking therefrom twenty-odd dollars in money and some checks, which he delivered to appellant; afterwards the money was divided between the two. At the time the murder took place appellant was sitting in his car a short distance from the scene, waiting for Prince to rob

the station. Appellant gave Prince the pistol with which Odom was killed. Appellant induced Prince to rob the filling station, and instructed him, if necessary in order to do so, to kill Odom. In other words, appellant was an accessory before the fact of the murder; he was the moving cause; he planned the murder, provided it was necessary in order to accomplish the robbery.

Appellant assigns as error the action of the court in refusing certain instructions requested on his behalf, the giving of certain instructions for the state, the admission of certain testimony over appellant's objection, and the misconduct of Holmes, one of the attorneys representing the state, in his argument of the case before the jury. It is doubtful whether the court committed any error in the giving and refusing of instructions, and the admission of testimony. The court promptly sustained an objection to the argument of Holmes, upon the ground that it was improper. Under the undisputed facts of this case, if it be true that the court erred in the giving and refusing of instructions, and the admission of testimony, as claimed by appellant, and that Holmes was guilty of misconduct in the argument of the case, they were errors which did appellant no harm whatever. Before this court will reverse a cause, it must be satisfied of two facts: First, there must be error; and, second, the error must be prejudicial to the appellant. Jones v. State, 104 Miss. 871, 61 So. 979, L. R. A. 1918B, 388; Patterson v. State, 106 Miss. 338, 63 So. 667; House v. State, 121 Miss. 436, 83 So. 611; Calicoat v. State, 131 Miss. 169, 95 So. 318; Lewis v. State, 132 Miss. 200, 96 So. 169; Goins v. State, 155 Miss. 662, 124 So. 785; Comings v. State (Miss.), 142 So. 19.

In House v. State, supra, the court held that, where, in a murder trial, the guilt of the defendant was manifest from the evidence, and the jury under their oaths could not have arrived at any other verdict than that of guilty, it was not reversible error for the district attorney in his argument to comment on the fact that the defendant had not testified, notwithstanding such comment was

prohibited by section 1918, Code 1906 (now Code 1930, section 1530).

If this were a civil case, the plaintiff would be entitled to a directed verdict in its favor. As stated above, this is a case where the evidence shows without dispute the guilt of the defendant to a moral certainty and beyond every reasonable doubt. Every material fact and circumstance in the case points to the guilt of appellant. On the other hand, there is no fact or circumstance in evidence which points to his innocence; therefore the jury, under the law and the evidence, could not have justly reached any other verdict than that of guilty. In such a case there is no use considering errors committed by the court in the conduct of the trial, unless they be so grave as to deny the defendant the benefit of some fundamental right.

Appellant argues that his fundamental rights were violated in this: (1) That he was tried on an indictment that was void—it charged no offense; (2) that the people of Forrest county, where he was tried, had prejudged his case, and for that reason he was entitled to a change of venue, which was denied him.

Appellant demurred to the indictment. The court overruled the demurrer. Appellant assigns and argues that action of the court as error. The charging part of the indictment is in this language: "Did then and there, in said county and state, unlawfully, feloniously, and of malice aforethought, shoot and mortally wound one J. L. Odom, a human being, with a deadly weapon, to-wit: a pistol, with the felonious intent then and there to kill and murder him, the said J. L. Odom, from the effect of which said wound he, the said J. L. Odom, then and there did die." The statutory form is in this language: "1211. Indictment—requisites of in cases of homicides. —In an indictment for homicide, it shall not be necessary to set forth the manner in which or the means by which the death of the deceased was caused, but it shall be sufficient to charge in an indictment for murder, that the defendant did feloniously, willfully, and of his malice

aforethought, kill and murder the deceased. And it shall be sufficient, in an indictment for manslaughter, to charge that the defendant did feloniously kill and slay the deceased, concluding in all cases as required by the constitution.''

Appellant argues that the indictment fails to meet the requirements of the statute in the following respects: (1) It does not allege that the killing was done willfully; (2) the indictment does not allege that the homicide was committed of appellant's malice aforethought, but only alleges ''was committed of malice aforethought;'' (3) ''because the indictment does not allege that the shooting and the mortally wounding was of the malice of the defendant, but merely alleges that it was done of malice aforethought, without referring to either of the parties indicted.'' We think the language used in the indictment is equivalent in meaning to the statutory language. Mere formal and technical words are not indispensable if the offense is certainly and substantially described in language meaning the same as that set out in the statute. State v. May, 147 Miss. 79, 112 So. 866; State v. Traylor, 100 Miss. 544, 56 So. 521; Richburger v. State, 90 Miss. 806, 44 So. 772; State v. Presley, 91 Miss. 377, 44 So. 827; Harrington v. State, 54 Miss. 490; Roberts v. State, 55 Miss. 421; Kline v. State, 44 Miss. 317, 2 Mor. St. Cas. 1695.

In State v. Presley, supra, the court said: ''Technical law is good law under proper circumstances, but not where it shocks common sense. . . . The exact language of a statute need not be used, where what is tantamount is fully set out.'' The words ''felonious intent'' include the word ''willful,'' and the word ''malicious'' includes the word ''willful.'' Bishop Crim. Procedure (2 Ed.), p. 613 (7), and authorities there cited.

As stated, appellant and Prince were jointly indicted. The indictment, instead of charging that the homicide was committed of their malice aforethought, charged that it was committed ''of malice aforethought.'' The ordinary mind in reading the indictment would at once

supply the word "their," because it is manifest from a reading of the whole indictment that the words "malice aforethought" refer to appellant and Prince, the two persons indicted.

Appellant made an application for a change of venue, supported by the affidavits of the number of credible persons required by the statute, section 1265, Code 1930. In his application he set out that, by reason of prejudgment of his case and grudge or ill will toward him in the public mind, he could not have a fair and impartial trial in Forrest county, where the offense was committed. This presented a prima-facie showing for a change of venue, which the state had a right to contest by the evidence of witnesses. Magness v. State, 103 Miss. 30, 60 So. 8. On the hearing of the application the state introduced sixteen witnesses, all of whom testified that in their judgment there had been no prejudgment of appellant's case; that there was no grudge or ill will toward him in the public mind; and that he could have a fair and impartial trial in Forrest county. Upon cross-examination the witnesses admitted that shortly after the homicide there was considerable feeling manifested by the public; that a crowd gathered at the jail where appellant and Prince were imprisoned; that the public press gave considerable publicity to the homicide; that on account of this feeling appellant and Prince were lodged in the jail of another county and there remained until the day before the trial when they were brought back to the jail in Forrest county; that a good deal of interest was manifested at the trial; that the courtroom was filled, but that at the time of the trial the public interest and feeling had subsided; that the state of the public mind was not so much one of ill will against appellant and Prince, but against the dastardly crime that had been committed, and that the interest of the public was to find the guilty parties.

Where the entire record in a murder case, viewed from its conclusion and as an entirety, shows that the defendant has had a fair and impartial trial, free from bias and prejudice, the defendant has no right to complain because

he was denied a change of venue, and, where the evidence is conflicting, the decision of the trial judge thereon will not be disturbed unless manifestly wrong. Walden v. State, 129 Miss. 686, 92 So. 820; Long v. State, 133 Miss. 33, 96 So. 740; Jones v. State, 133 Miss. 684, 98 So. 150; Mackie v. State, 138 Miss. 740, 103 So. 379.

In the Jones case, on the application for a change of venue, the testimony of several witnesses was taken, including the publishers of two newspapers in the county who introduced the files of their papers giving an account of the confessions of guilt made by Jones. One of the publishers testified that his paper had a circulation in the county of about fifteen hundred, and the other that his paper had a circulation of about one thousand. Various persons residing in the county, from different parts of the county, testified that they had heard of the defendant's confessions, and that the matter had been discussed in their several communities, but nearly all of the witnesses testified that they believed the defendant could get a fair and impartial trial, and that they did not believe there was any more notoriety or prejudgment of the defendant's case than in other murder cases in the county. The trial court denied a change of venue, and the supreme court held it committed no error in doing so.

The granting of a change of venue is so largely in the discretion of the trial court that a judgment of conviction will not be reversed on appeal, on the ground that a change of venue was refused, unless it clearly appears that the trial court abused its discretion. Dalton v. State, 141 Miss. 841, 105 So. 784.

We cannot see that the trial court abused its discretion in refusing to grant appellant a change of venue. The judgment of the lower court is affirmed, and Thursday, July 14, 1932, is fixed for the day of execution.

Affirmed.