TRIPLETT *v.* STATE

No. 40455 March 25, 1957 93 So. 2d 654

*W. T. Weir,* Philadelphia, for appellant.

*John H. Price, Jr., Asst. Atty. Gen.,* Jackson, for appellee.

LEE, J.

Lula Ann Triplett was convicted of the murder of her husband, Monroe Triplett. The court sentenced her to serve the term of her natural life in the state penitentiary after the jury found her guilty as charged and certified that they were unable to agree upon the punishment. From that judgment she appealed.

It appeared that Monroe and Lula Ann were married on November 9, 1955; that he left home early Saturday morning, November 26th; and did not return until 3:00 or 4:00 o'clock the next afternoon.

Andy B. Triplett, a brother of the deceased, living about 200 yards from Monroe's home, testified that he saw his brother when he returned and went into his house. Immediately Lula Ann came out of the house, went to the woodpile, and got a shotgun. As Monroe started out on the porch, she shot at him and the load knocked his hat off. The witness then went to within about 50 yards of the house, where he said that he could see and hear everything that transpired. Several times as Monroe started out of the house, Lula Ann shot at him. Finally the fourth shot struck him in the head, and tore away a large part of his skull. He fell to the porch unconscious and subsequently died. The witness was positive that there had been no quarrel, that Monroe did not have a gun or weapon of any kind, that he was not making any effort to do her bodily harm, and that he was in fact running for his life at the time he was killed. The witness denied that he told J. M. Spears and Curtis Chisholm, the sheriff and his deputy, that Monroe shot twice across the field, but said that if he did, it was because he was scared.

This witness together with Sara and A. D. Triplett testified that they saw Lula Ann between 11:00 and 12:00

o'clock that morning and that she was carrying a long package which, it was afterwards developed, contained the 16 gauge shotgun with which she killed the deceased, and that she was inquiring as to whether Monroe had gone home or whether he had been seen.

Johnnie Carter testified that Lula Ann came by her house about 11:00 o'clock that morning. When she was asked where her husband was, Lula Ann replied that she had not seen him, and that she was going to kill the s— of a b— when he came home that evening. Johnnie reminded her that the Ten Commandments say "Thou shalt not kill" and Lula Ann replied, "Miss Johnnie, I knows and I thank you for your advice, but it ain't going to do no good." Charlie Carter, the husband of Johnnie, testified that he also heard this threat. A. D. Triplett also testified that, when he picked Lula Ann up around 3:00 o'clock that afternoon about a half mile from her home, she had the long package; and that when he asked what it was, she said that it was something that she had ordered. Furthermore, she asked if he had seen Monroe, and when he replied that he had not, she said, "When you see him, you had better look at him good. I am going to kill him."

Mr. Dewitt Burkes went to the scene shortly after the shooting. At the woodpile he found the paper box which had contained the shotgun. Some empty 16 gauge shells were picked up about the premises. There was no gun or weapon of any kind near the body of the wounded man. The witness further testified that he had left his 12 gauge shotgun at Monroe's house a short time before but he had left no shells with it. He got his gun out of the house and said that it had not been recently fired. Mervin Spears also testified that there was no weapon near the deceased.

Thomasine and Glenda Ray Goodwin, sisters of the defendant, testified that they were present at Johnnie

Carter's home and that Lula Ann did not make any threat against Monroe.

The defendant, testifying for herself, denied that she made the threats at Johnnie Carter's home or to A. D. Triplett. She said that, when Monroe came in that afternoon, she spoke but he did not; that he asked her where she had been, and when she told him that she had been to church, he called her a liar, and said that she had been out with men; that he told her to leave and that he was going to bring in another woman the next day; that he slapped her and she hit him back; that when she went out on the porch, he got a loaded 12 gauge shotgun and fired at her as she ran behind the car; that she went to the side door, got her gun, and fired back; that they both shot at each other twice; that she then heard Monroe in the loft getting more shells and she peeped though a crack and saw him filling his pockets with them; that he came to the door, called her and told her that if he laid eyes on her, he was going to kill her; that as she peeped around the corner, he saw her and threw his gun on her, and that she turned and fired. She was within 8 or 9 feet of him at the time; and although she said that she was shooting at his legs, she hit him in the head. She denied that he was wearing the hat which was introduced in evidence.

Willie Goodwin, Jr., the defendant's 12 year old brother, testified that Monroe and Lula Ann had an argument and both struck each other; and that Monroe got the gun and some shells and that as Lula Ann ran out of the house he fired at her. The witness said that he then left the scene.

J. M. Spears and Curtis Chisholm, the sheriff and his deputy, testified that Andy B. Triplett told them shortly after they reached the scene that Monroe had shot or fired across the field twice. Both of them, on cross examination, stated that they found no gun or

weapon anywhere around Monroe; that they picked up several empty 16 gauge shells, but that there were no 12 gauge empties; and that there were no shells in Monroe's pockets.

It was very significant that no one found any gun around the body of Monroe, or shells in his pockets or around his body, or empty 12 gauge shells about the place. Besides there was the testimony of the owner of the 12 gauge shotgun that he did not leave any shells on the premises, and that the gun had not been fired when he got it that afternoon. All of the empties were 16 gauge, and undoubtedly came out of Lula Ann's gun.

Monroe's absence from home for about 36 hours afforded a motive for the killing. Proof that Lula Ann was inquiring about him, making threats against him, and carrying a gun around in the package, showed a purpose and design to kill. When the testimony of Andy B. Triplet is added to these circumstances, it is clear that the jury was fully warranted in finding the defendant guilty of murder. When it is remembered that no gun was found about the body of the deceased, or loaded or empty 12 gauge shells in his pockets or around the premises, and that the only shells which were found, either loaded or empty, were 16 gauge and must have come out of Lula Ann's gun, and that the 12 gauge gun had not been fired, clearly the jury was fully warranted in rejecting the defendant's claim of self defense.

 █ Consequently, the appellant's contention that the verdict of the jury was contrary to the overwhelming weight of the evidence is untenable.

 █ The appellant argues only one other assignment, namely, that the court erred in admitting the evidence of Charlie Carter concerning a threat.

Process for this witness was not issued until just before he was put on the stand. Evidently he was not known to be a witness at the time that the rule was in-

voked. The court expressed doubt that the witness had heard what had gone on before as he was sitting in the balcony of the courthouse. Be that as it may, whether a witness may testify when he has remained in the courtroom after the rule has been invoked, rests largely in the discretion of the trial judge; and this court will not reverse in such an instance unless there has been an abuse of discretion. Chilcutt v. Keating, 220 Miss. 545, 71 So. 2d 472; Wilson v. Peacock, 111 Miss. 116, 71 So. 296; Savell v. Schultz, Baujan & Co., 213 Miss. 427, 57 So. 2d 151. There was no abuse of discretion in this instance.

Consequently it follows that this cause must be affirmed.

Affirmed.

*McGehee, C. J.,* and *Hall, Holmes* and *Ethridge, JJ.,* concur.