## Stokes *v.* State.

No. 41694 March 6, 1961 128 So. 2d 341

*H. C. Moynihan, Wilmer O. Dillard, Stewart J. Gilchrest,* Laurel, for appellant.

*G. Garland Lyell, Jr.,* Asst. Atty. Gen., Jackson, for appellee.

McElroy, J.

This case originated in the Second Judicial District of Jones County, Mississippi. William Stokes was indicted on the twenty-fourth day of March, 1960. The indictment charged that he, on or about the third day of March, 1960, in the county and district aforesaid, did wilfully and unlawfully, feloniously and with malice aforethought, kill and murder one Mrs. Eula Clark, a human being, and against the peace and dignity of the State of Mississippi.

This case was argued before the Supreme Court December 5, 1960, with the understanding that the record was to be amended and the attorney general was permitted to submit his brief at a later date. The amendment to the record was filed December 12, 1960, and the brief of the attorney general for the appellee was filed January 30, 1961.

On the morning of March 3, 1960, the body of Mrs. Eula Clark was found in the back portion of her store, known as Clark's Grocery, on Meridian Avenue in Laurel, Second Judicial District of Jones County, Mississippi. The Laurel Police Department was notified and reported to the store where they had the body examined by a medical doctor. The examination revealed that Mrs. Clark had died from wounds in her chest apparently inflicted by a knife or other sharp instrument.

The front portion of the building in which the body was found was used for a small store, and there is a step-up of about four feet leading into the back of the building, the first room being the portion used as a kitchen. The next room immediately to the left going into the

kitchen was formerly a bedroom. The next room turned to the right and was formerly a bedroom and turning to the right again is the portion used as a bedroom. The deceased was found in this bedroom in the doorway of the bathroom.

The accused was seen on Joe Wheeler Avenue, which runs parallel to Meridian Avenue and is one block away, and about one block north from the street running east and west and parallel to the Clark's Grocery. The accused was seen by Leroy Brown who testified that he had on an army coat and his pants and everything were full of blood. He passed him running. They spoke to each other and he proceeded on to his cousin's store known as Dicky Boy's Place. The local police were notified and they proceeded to commence a search for the accused who was apprehended in Marianna, Florida. He was flown to Jackson, Mississippi, by Mississippi officers on March 21 and was taken to the highway patrol building where the following confession was obtained. "He said that on Thursday morning, the 3rd of March, that he got up and went and got some whiskey and started drinking, and that he left from the southern part of town, I don't remember the street number, and went up to Dicky Boy's shop, who is a first cousin of his. He said Dicky Boy's Place was not open and he went from there around to Mrs. Clark's store, and when he got around there he went up to the door and there were two colored ladies in the store so he turned around and went back to Dicky Boy's shop and that Dicky Boy was still not open, and he turned around and came back to Mrs. Clark's store, came in the door and Mrs. Clark started walking to the kitchen, or to the back of the store, and that he followed her and got in an argument with her and hit her with his fist and then he stabbed her with a knife two or three times, that he was so drunk he couldn't remember how many times, and that he then got her by the hands and drug her to the bathroom door, and then

went out through the front door of the store and went back around to Dicky Boy's shop. He said he met Leroy Brown on the sidewalk close to Dicky Boy's shop and spoke to him, and he then went behind Dicky Boy's shop and pulled off a pair of pants and that he threw them in a ditch, and the best he remembered, he threw the knife in there somewhere near where he threw the pants, and then he went from this same street, Joe Wheeler Avenue, I believe he said to the new highway, and back across to the house where he was staying, back to Arthur Jordan's, changed clothes, put a coat and some other things in a suitcase, that the suitcase wouldn't hold all the things he had, and he put one pair of pants in an outdoor toilet back of the house, and that he went from there around to the bus station.''

The accused was indicted by the grand jury on the twenty-fourth day of March, 1960. Three attorneys were appointed to represent him and the defendant was arraigned March 30. On April 8, a motion for a change of venue and continuance was overruled. A special venire of one hundred men was drawn and the trial was set for April 13. He was convicted and sentenced to be executed. By agreement of counsel he was ordered transferred to the state penitentiary.

Also by agreement, a motion for a new trial was set to be heard within fifteen days of the adjournment of court. At the hearing in vacation the defendant was not present. No objection was made at the time and one of the attorneys for the defendant told the county attorney and the judge that no point would be made of his absence.

The appellant assigns as error the lower court's overruling of his motion to quash the indictment, the overruling of his demurrer to the indictment, the overruling of his motion for a change of venue and continuance, the granting of certain instructions and refusing of other instructions, the overruling of his motion for a new trial,

refusing to dismiss a juror for cause, admitting photographs offered on behalf of the State, permitting the State to put on its case "piecemeal", admitting certain evidence obtained by illegal search, permitting officers of the court to be present and hear each other's testimony, admitting the confession into evidence, not having the appellant present at his hearing for a new trial and that the verdict of the jury was against the law and evidence and evinces bias, passion and prejudice on the part of the jury.

The appellant argues that the motion to quash the indictment should be sustained because there is a variance between the name on the indictment as William Stokes and that the extradition papers showed Wesley Stokes, Jr., and Wesley Stokes and it is not shown that they are the same person, and the court should have required the State to amend the indictment. He does not cite any authorities in his brief except Secs. 2450, 2452 of the Code. There cannot be any merit in this contention due to the fact that in all the proof it was William Stokes and he was referred to differently by different people.

The demurrer to the indictment is to the effect that the indictment ends "and against the peace and dignity of the State of Mississippi". That is exactly what the Constitution says, that all indictments shall end "against the peace and dignity of the State". There can be no merit in this contention. All that the state has to do in an indictment is to comply with the requirements of the law.

The appellant contends that the court erred in overruling the motion for a change of venue and a continuance. He sets up many grounds in the motion, such as: "The defendant is a male member of the Negro race, has incensed and inflamed the public feeling against him and that the deceased was a white woman of a very prominent family. There was local bitterness against the de-

fendant, that there was publicized a large reward for the apprehension of the defendant and that there was fear of mob violence. That in the appointment of the attorneys inflammatory speeches against the defendant made by some of the attorneys that the court asked to represent the defendant. That these attorneys were widely known throughout the county and adjoining counties and were held in high respect by the public. That one was an immediate past county attorney and immediate past district attorney.'' This motion was sworn to by Stewart J. Gilchrist and William O. Dillard.

There is no proof in the record that such statements were made by the attorneys. The court made the statement that any reasons or excuses the attorneys had for not being appointed would be made in chambers. However, there is a news item in the local paper making such a statement. The only record that was made in open court in reference to the appointment of the attorneys was as to the state of health and if they had any other statements to make that it would be made in chambers before the judge.

There is much proof on this motion for a change of venue and it was carried out by testimony of the witnesses through the questioning and selection of the jury in the trial of the case. Six witnesses testified for the State that in their opinion the defendant could get a fair trial. Four witnesses testified for the defense. The court properly considered all of the proceedings in the voir dire examination of the prospective jurors in determining whether or not defendant could get a fair trial.

In Keeton v. State, 132 Miss. 732, 96 So. 179; Jones v. State, 133 Miss. 684, 98 So. 150, it was held to the effect that where the people of the county have not prejudged the defendant's case, then there is no prejudice against the accused and that the voir dire examination of the prospective jurors shows that a fair proportion of the jurors of the county are qualified for service in the

case, it is not error for the trial judge to overrule a motion for a change of venue.

In this case the voir dire examination shows that a fair proportion of the jurors of the county were qualified for service. Twelve out of thirty-eight jurors examined were disqualified because they had opinions. The court must look to all the attendant facts and circumstances and should not and will not reverse a trial judge in the exercise of his discretion if a fair proportion of the jurors examined can give the defendant a fair trial. Shelton v. State, 156 Miss. 612, 126 So. 390.

In Shimniok v. State, 197 Miss. 179, 19 So. 2d 760, the Court held the rule for our guidance in such cases was stated in Wexler v. State, 167 Miss. 464, 142 So. 501, where it was said: ''The granting of a change of venue is so largely in the discretion of the trial court that a judgment of conviction will not be reversed on appeal, on the ground that a change of venue was refused, unless it clearly appears that the trial court abused its discretion.''

In this particular case the questioning went on through the motion for a change of venue and in the voir dire examination.

On behalf of the State a witness who was a former legislator and was well known throughout the county stated that he believed that the defendant could get a fair and impartial trial, that the people had not prejudged the case, that there was no talk of mob violence, that the case was no more than any other charge of murder. The sheriff of the county testified that the defendant could get a fair and impartial trial, that he had talked to a lot of people and had found no one who had prejudged the case, that there had been more than $500 obtained for the purpose of a reward, that there had been some talk that the defendant was surrounded in a community of the county but no one expressed themselves about mob violence but, to the contrary, they wanted to

apprehend the person for the purpose of turning him over to the authorities, believing that he could get a fair trial in the county. The other four witnesses' testimony was to the same effect. The court was certainly within its right in overruling this motion after the testimony was offered on the change of venue and the question on the voir dire examination.

In Wheeler v. State, 219 Miss. 129, 63 So. 2d 517, it was held: "Dealing first with the motion to change the venue, it is obvious that the killing of two policemen of the City of Hattiesburg, while on duty, would cause considerable publicity both through the newspapers and over the radio. Of course, some people are impulsive and jump to conclusions from a mere smattering of the facts. But, the great majority of people withhold their judgment until they ascertain all of the facts. One may feel that, assuming a certain state of facts to exist, his conclusion would be thus and so; but, not knowing whether this assumption is true or false, he is able to cast it out of his thinking, and, if chosen as a juror, will look upon the accused as innocent, disregard what he has heard, and require the State to prove his guilt beyond every reasonable doubt.

"A number of witnesses, testifying for the accused, were of the opinion that a large majority of the people with whom they talked held fixed opinions that he was guilty. A greater number, testifying for the State, were of a contrary view, and expressed the opinion that the accused would be accorded a fair and impartial trial in the county. Forrest is one of the most densely populated counties in the State. A jury was obtained from the original special venire of 75, plus the two regular juries for the week, and plus an additional venire of 62, or a total of 161. Of this number eighteen were excused on account of partial or fixed opinions, and sixteen because of conscientious scruples against the infliction of the death penalty. Less than twelve percent of the prospec-

tive jurors had made any prejudgment of the case. The entire voir dire examination appears in the record. It reflects vigilance on the part of the trial judge to see that a fair and impartial jury should be empaneled to try the case. Moreover, appellant had already accepted ten jurors before his peremptory challenges were exhausted.

"On this proposition there is great similarity in the facts of this case and the case of Shimniok v. State, 197 Miss. 179, 19 So. 2d 760. In that case, the deceased was an ex-sheriff and a very popular man in Wayne County. The defendants were strangers. Much publicity had been given to the killing through the newspapers and otherwise. The evidence for the State was to the effect that the case had not been prejudged by the public and that the appellants could obtain a fair and impartial trial before a jury from that county. From the special venire of 150 men, it appeared that ten were excused on account of fixed opinions. The Court in its opinion referred to the fact that the trial judge saw the witnesses, who testified on the motion, and the potential jurors as they were being questioned, and concluded that he was in much better position to judge of their credibility than was the appellate court. Under such circumstances it was there held that the trial judge had not abused his discretion in overruling the application for change of venue. See also Wexler v. State, 167 Miss. 464, 142 So. 501; Dalton v. State, 141 Miss. 841, 105 So. 784; Musselwhite v. State, Miss., 54 So. 2d 911.

"For like reasons, we are unable to say that the trial court abused its discretion; and we, therefore, hold that no reversible error was committed in overruling the application for a change of venue or in overruling the motion to quash the indictment on the ground of ill-will or prejudgment of the case." Golden v. State, 220 Miss. 564, 71 So. 2d 476, held to the same effect.

Gallego v. State, 222 Miss. 719, 77 So. 2d 321, held: "The trial judge was fair and impartial, and he saw to it that no juror served on the panel who had any doubt in regard to being able to disregard what he had read about the case, and try the defendant on the testimony given from the winess stand. The district attorney, although developing the testimony and prosecuting the case with conspicuous ability, was exceedingly fair, and took no undue advantage of the accused, either in the presentation of the evidence or his argument to the jury. It is conceded in the briefs of counsel that he and the sheriff of the county raised a fund for the expense necessary to enable the defendant's mother to come from Hawthorne, California, to Pascagoula, Mississippi, to testify as to the life story of the accused on the question of whether he was sane or insane, she and the accused being without means to otherwise defray the expense of her transportation.

\* \* \*

"On the application for a change of venue, it is a matter of common knowledge that when such an application is granted the case is transferred to another nearby county for trial, since the county where the crime is committed is to bear the expense of the attendance of the State's witnesses and of the entire trial elsewhere. The newspapers hereinbefore mentioned have a general circulation in the adjoining counties, except that the circulation of the local newspapers referred to as being published in Jackson County would probably have been confined largely to that county; and therefore the news items complained of as appearing in the other newspapers heretofore mentioned would naturally have been read by the general public in each of the nearby counties in regard to such a wilful, brutal, remorseless, and callous murder of a peace officer as was detailed in such news items under the conspicuous headlines of the papers wherein they were published."

■■■ The contention is that the lower court erred in admitting photographs on behalf of the State because they were inflammatory and prejudiced the jury against the defendant. This matter was based on the Price case, supra, and the case was not reversed on that point. The mere fact that photographs may be horrible and gruesome is no reason why they should not be admissible.

■■■ In Hancock v. State, 209 Miss. 523, 47 So. 2d 833, it is stated that the photographs are relevant, competent material to show the scene of the crime, the position of the body with respect to the floor plan and the location and nature of the sights. If the photographs are pertinent material and relevant as evidence the fact that they will arouse the emotion of the jury in homicide prosecutions does not render the photographs incompetent.

■■■ The appellant complains that the court permitted the State to put on its case ''piecemeal''. The court has a sound discretion in handling a lawsuit as long as no rights of the defendant are being violated, ■■■ and in this particular case where there is objection to the confession, of course they had to prove first the admissibility of the confession before it could be competent before the jury and witnesses would have to testify at different times.

■■■ The point that the lower court erred in obtaining the clothing of the defendant without a search warrant probably would have merit if it were not for the fact that the testimony in this case is to the effect that the officers had a call to come to Charlotte Jordan's home, and it was after they had answered this call this same woman gave to the officers the clothing in question. There is no proof that any search was made whatever. To the contrary the woman made the search herself and gave the clothing in question freely and voluntarily on her part to the officers.

■■■ There is certainly no merit in the contention that the court erred in permitting the officers to remain

in the courtroom and hear each other's testimony. This Court has held in many cases that the court does not abuse its discretion because the officers are a part of the court and must maintain order. Gillespie v. State, 215 Miss. 380, 61 So. 2d 150, held that the court did not err in permitting the county attorney to testify as a witness in rape prosecution as the county attorney had remained in the courtroom and had heard part of the testimony of other witnesses. The Court stated ''even if attorneys were not exempted from the rule which requires that witnesses be excluded from the courtroom while other witnesses are testifying, the trial court would have the power in its discretion to suspend the rule and permit such witness to testify at any time where the ends of justice require that the rule be relaxed or suspended, that a full and fair hearing on the merits may be assured.'' Citing Wilson v. Peacock, 111 Miss. 116, 71 So. 296; Savell v. Schultz Baujan & Co., 213 Miss. 427, 57 So. 2d 151. See Graham v. State, 195 Miss. 291, 15 So. 2d 478; Faust v. State, 221 Miss. 668, 74 So. 2d 817; Triplett v. State, 230 Miss. 707, 93 So. 2d 654.

The appellant contends that the confession is inadmissible. The appellant contends that the confession was obtained through fear, coercion, inducement and hope of reward, that the defendant, when taken to the highway patrol station after a plane ride from Marianna, Florida, was sick, that he was given water three times, that Bruno Riley had known the defendant and his family in Stonewall, Mississippi, and used this family relationship to induce the defendant into making the confession by letting him believe that it would help him, stating that the confession could be used for or against him.

There is nothing in this record to indicate that Riley or anyone else offered appellant any hope of reward or that any undue influence of any kind was used. The record is replete to this effect. The record shows that they picked him up in Marianna, Florida, and flew

him to Jackson, Mississippi; that they were kind to him, did not abuse him in any way, there was no hope of reward offered, no punishment shown, but to the contrary, the evidence shows that the confession was free and voluntary, and the sheriff testified that he carried him to Jackson for safekeeping and nowhere in the evidence is it shown that in obtaining the confession that any of the defendant's constitutional rights were violated, and that in obtaining this confession everything appeared to be proper and normal standard procedure.

In Miller v. State, 207 Miss. 156, 41 So. 2d 375, the Court said: "The petitions alleged that appellant was an ignorant, uneducated Negro, of less than normal intelligence, twenty-two years of age; and that his confessions in the two cases were extorted from him by beating with a policeman's blackjack, threats against his life, and misrepresentation. Furthermore, he alleges that he was kept incommunicado, no attorney or his family was present when he made either his oral or written confessions, and members of his family were not permitted to visit him in jail. He also charges that when he was arraigned, he was unfamiliar with courts, had no attorney to advise him of his rights, and plead guilty because he knew nothing else to do. And that the court failed to appoint him an attorney, neither he nor his family being able to employ one. Appellant's evidence was along the line of his allegations in his petitions.

"The State's witnesses, Mayor of Amory, Chief of Police of that city, policemen, deputy sheriffs, and private citizens all testified that he was not beaten, was not threatened, no misrepresentations were made to him, and no promises were held out to him, and that his confessions were free and voluntary, and that he fully understood what he was doing and saying. * * *

"Furthermore, the Supreme Court of the United Sates, in Bute v. Illinois, 333 U. S. 640, 68 S. Ct. 763, 92 L. Ed. 986, that: 'In reviewing a conviction of crime,

doubts should be resolved in favor of the integrity, competence, and proper performance of their official duties by the judge and state attorney.' "

██ Appellant complains that the instruction granted to the State is too broad and is erroneous. This instruction is in reference to malice aforethought. We see no merit in this contention. This is more or less the type instruction given in all murder cases. In Price v. State, 207 Miss. 111, 41 So. 2d 37, the argument that there was a reference in the instructions to accidental killing the court commented that there was little, if anything, that the inference could be drawn by the jury that the killing was accidental but that was a matter of defense which was fully submitted to the jury under an instruction obtained by the appellant and therefore there was no error in the instruction granted. The appellant obtained two instructions on the defense of manslaughter. The court was very lenient in granting such instructions in view of the nature of the crime which the testimony in this case shows beyond question.

██ The appellant complains of the refusal of the instructions on intoxication. Voluntary intoxication is no defense in a murder case. In Melton v. State, 155 Miss. 659, 124 So. 802, the Court stated we cannot approve the latter paragraph whereby intoxication which rendered the accused incapable of formulating an intent to kill would reduce to manslaughter what otherwise would be murder.

In Thurmond v. State, 212 Miss. 36, 53 So. 2d 44, the Court held: ''Cases are abundant which deny to an accused any defense based upon voluntary intoxication. We have so held, beginning with Kelly v. State, 11 Miss. 518, and through other decisions, culminating in Melton v. State, 155 Miss. 659, 124 So. 802, where it was stated: 'The record shows that, while the deceased was attempting to do a friendly act towards appellant, and without any reason on the part of anybody there present to sus-

pect danger, appellant suddenly announced with an oath that he was going to kill deceased, and immediately shot him. Upon such a record we would be at a loss how or where to draw a line between partial intoxication, and the so-called complete intoxication. The dangerous ground that would be entered upon in the attempt to draw such a line admonishes us against the venture, and compels us to remain within the established doctrine that voluntary intoxication is no defense.' And the following statement from People v. Rogers, 18 N. Y. 9, 18, was quoted with approval: 'Such a principle is absolutely essential to the protection of life and property. In the forum of conscience there is no doubt considerable difference between a murder deliberately planned and executed by a person of unclouded intellect, and the reckless taking of life by one infuriated by intoxication; but human laws are based upon consideration of policy, and look rather to the maintenance of personal security and social order, than to an accurate discrimination as to the moral qualities of individual conduct. But there is, in truth, no injustice in holding a person responsible for his acts committed in a state of voluntary intoxication. It is a duty which every one owes to his fellowmen and to society, to say nothing of more solemn obligations, to preserve, so far as it lies in his own power, to inestimable gift of reason. If it is perverted or destroyed by fixed disease, though brought on by his own vices, the law holds him not accountable. But if by a voluntary act he temporarily casts off the restraints of reason and conscience, no wrong is done him if he is considered answerable for any injury which in that state he may do to others or to society.' We are aware of course that these cases did not deal with convictions of murder. We are not called upon to analyze trends which find exceptions in cases where the degree of intoxication is totally disabling or those which apply the tests applicable to the defense of insanity. We have assumed, without decid-

ing, that there must exist a capacity to form a deliberate design to effect death, and it is enough that such a test was submitted to the jury.''

In the appellant's confession, even though he states that he was drunk, he goes into detail in telling exactly what happened. He told of going to the store and seeing two people there and going back to Dicky Boy's Place. He also told of seeing Leroy Brown and how he killed the deceased and what he did after he had committed the crime. We certainly see no error in refusing this instruction.

 The appellant stresses the point that he was not present at the hearing of his motion for a new trial. He cites Sec. 2519, Code of 1942: ''In criminal cases the presence of the prisoner may be waived, and the trial progress, at the discretion of the court, in his absence, if he be in custody and consenting thereto.'' And they submit that there was no consent on the part of the appellant, either expressed or implied.

In Willette v. State, 219 Miss. 793, 69 So. 2d 407, the Court held ''when the motion is considered by the lower court the appellant should be present unless his presence is waived by his counsel.''

The record reflects that the conviction and sentence were at the end of the term and that the appellant's counsel obtained an order giving them fifteen days in which to prepare and present a motion for a new trial in vacation. In passing on the motion for a new trial the court entered the following order: ''The motion of the defendant by his attorneys for additional time in which to file a motion for a new trial and upon good cause being shown the defendant is hereby granted fifteen days additional time for the filing, hearing and decision of the said motion by defendant in vacation.'' The order was entered on the sixteenth day of April, 1960.

The court stated that one of the attorneys for the defendant waived the presence of the defendant in court

at the time the motion was to be heard and no point would be made by them. The court also held that he made such a statement to the county attorney and the court also stated that no one made any point in considering the motion for a new trial about the defendant's absence. We are of the opinion that the attorneys for the defendant waived the presence of the defendant at the hearing of this motion. Nowhere in the record was the absence of the defendant brought to the attention of the trial judge.

In Sims v. State, 209 Miss. 545, 47 So. 2d 849, the Court held:

"Appellant next says he was denied his constitutional rights in that he was not present when the motion for new trial was heard. The contention can avail him nothing here. This was not mentioned in the lower court. Absence of defendant was not brought to the attention of the trial judge. The point was not mentioned in the assignments of error nor in the original brief of appellant on this appeal. Counsel frankly says it is mentioned for the first time in his reply brief. We need not consider it. However, on the merits, we might add that apparently under this record defendant was in custody. Under such circumstances he had the right to waive his presence at the hearing. Section 2519, Code 1942; Odom v. State, 172 Miss. 687, 161 So. 141; Hamburg v. State, 203 Miss. 565, 35 So. 2d 324."

The court in its order on the bill of exceptions held that he heard the motion for a new trial at 9 o'clock Saturday, April 30, 1960, according to the order entered on April 16 in reference to the setting of the hearing and on that date on which he heard the motion for a new trial the defense counsel agreed with the district attorney and county attorney that the defendant could be transported to the state penitentiary; that all the counsel agreed on was the date of the hearing for the motion for a new trial; that Mr. Gilcharist had previously stated

to the judge prior to the hearing that no point would be made as to the defendant's not being present at the hearing for the motion for a new trial and during the hearing one of the defendant's counsel, Mr. Gilcharist, stated to the county attorney that no point would be made as to the defendant's not being present. The court further stated that no argument was heard on the motion although counsel for the defendant was prepared to argue the same but the desire to argue was not called to the court's attention and no objection was made to the court's ruling nor did the defendant's counsel ask for a bill of exceptions and no point was made at any time by any of the attorneys during the hearing of this motion as to the defendant's not being present in court.

This is purely a legal proceeding for review by the trial judge and the presence of the defendant is neither necessary nor desirable from any standpoint in the absence of the appellant. Per se this is not prejudicial.

In Brister v. State, 231 Miss. 728, 97 So. 2d 654, the Court held:

"Since the absence of appellant from the anteroom was voluntary, the right to be present during that particular phase of the trial was waived. Sec. 2519, Mississippi Code of 1942; Williams v. State, 103 Miss. 147, 60 So. 73; Thomas v. State, 117 Miss. 532, 78 So. 147; Ford v. State, 170 Miss. 459, 155 So. 220; Hamburg v. State, 203 Miss. 565, 35 So. 2d 324; Sims v. State, 209 Miss. 545, 47 So. 2d 849. The cases of Sherrod v. State, 93 Miss. 774, 47 So. 554, 20 L.R.A., N.S., 509; Warfield v. State, 96 Miss. 170, 50 So. 561, and Watkins v. State, 110 Miss. 438, 70 So. 457, were overruled by Ford v. State, supra.

"The judge observed that the defendant did not go to the anteroom and did not consider it necessary to require him to do so. No prejudice was alleged or shown. It appears that appellant received a fair and impartial trial. The voluntary absence of appellant from the ante-

room when the jurors were challenged did not constitute reversible error.''

■ ■ In no way does the appellant show that the defendant was prejudiced in the trial of this case due to his absence on the motion for a new trial. However, no court would want to do the defendant an injustice due to a pure technicality, but where no prejudice has been shown, it is hard to see that any of the rights of the defendant have been violated. The Court will look to the whole record in viewing this matter. Tillotson v. State, 1 So. 2d 497; McCullock v. State, 194 Miss. 851, 13 So. 2d 829; Parker v. State, 201 Miss. 579, 29 So. 2d 910; Grace v. State, 212 Miss. 784, 55 So. 2d 495; Jones v. State, 61 So. 979; S. Ct. Rule 11.

In Jones v. State, supra, the Court held: ''In order to secure a reversal it must be shown that there was an error and that the error was prejudicial until it is shown that the party against whom an error is committed has failed to obtain justice it cannot be said that he has been prejudiced, injured or damaged by its commission.''

■ ■ After the State put on its testimony, no testimony was offered on behalf of the defendant. No serious point is made on appeal with respect to the actual guilt of appellant and the only argument made is that there was no evidence of malice or premeditation or deliberate design by the appellant to take the life of the deceased. This was a most brutal murder. The deceased was stabbed several times about the chest and head. No plan or malicious scheme need be proved by the State. Malice is implied by the use of a deadly weapon. ■ ■ Actual malice is not a necessary ingredient of murder. Criss v. State, 202 Miss. 184, 30 So. 2d 613, held a deliberate design under these circumstances is all that is necessary. Goldsby v. State, 226 Miss. 1, 78 So. 2d 762.

■ ■ The jury's finding the defendant guilty of murder is based upon substantial testimony. We can go no further than examine whether there be error in law

or fact in submitting to the jury the issue of murder. After a careful and protracted consideration of the entire case in full consciousness of our solemn duty both to the law and to the appellant, we have been unable to find any reversible error. The judgment is affirmed and Friday, April 21, 1961, is fixed as the date for execution of the death sentence so imposed.

Affirmed, and Friday, April 21, 1961, is date fixed for execution of death sentence.

All Justices concur.