SIMMONS *v.* STATE.

No. 41876 May 29, 1961 130 So. 2d 860

*John B. Loomer,* Yazoo City, for appellant.

*G. Garland Lyell,* Asst. Atty. Gen., Jackson, for appellee.

McELROY, J.

This is an appeal from the Circuit Court of Yazoo County, Mississippi, wherein J. W. Simmons was convicted of the crime of murder and sentenced to be executed in the gas chamber.

March 19, 1960, Mr. Hugh O'Reilly, hearing a noise in his store a short distance from his home, telephoned a friend, A. D. Hearst, to arm himself and go with him to the store to investigate. Hearst armed himself with a shotgun and called his two sons to arm themselves and go with him to O'Reilly's store. The sons were left on guard in front of the store. Hearst and O'Reilly, both armed with pistols, entered the back door of the store. On entering the store they encountered a Negro, Nat Rogers. Hearst advanced upon the Negro, hit him with his gun, and had him to lie down upon the floor. He asked him where his buddy was and he pointed to a store-room in the rear of the building. This building had been burglarized by Nat Rogers and J. W. Simmons and they were in the process of getting things when O'Reilly and Hearst entered on the scene. Mr. O'Reilly, with his pistol in his hand, entered the storeroom of the building, and when opening the door, the Negro, J. W. Simmons, shot Mr. O'Reilly twice with a "carbine pistol", hitting him once in the breast and once in the stomach, and he died immediately.

Simmons signed a confession, as follows: I, J. W. Simmons, make the following free and voluntary state-ment to Sheriff W. T. Stubblefield of Yazoo County, Deputy Sheriff Woodell of Yazoo County, Mississippi, and Mr. Leonard Thames, who I know to be an officer of the Mississippi Highway Patrol.

"No threats or promises have been made against me, and I know anything I might say may be used in a court of law. I have been advised of a right of a lawyer.

"I, J. W. Simmons, am 26 years old, and I live at Pick-ens. My address is Box 1825 Pickens, Mississippi. About dark, Saturday of March 19, 1960, me and Nat Rogers went to Mr. Bebe, Stuart Bridgeforth's to get the truck, and Nat went to the office and got the army car-bine rifle and 16 gauge pump shotgun. After Nat got the rifle and gun we went to the truck and went down

Highway 432 and parked the truck across the road from my aunties, Susan Hayes' house. We got out and went on down to the store. I had the carbine rifle and Nat Rogers had the shotgun and tire tool that came out of Mr. Bebe's truck. Then me and Nat Rogers went down to Mr. Hugh O'Reilly's store. We went to the front door and punched a hole in the front door with a tire tool and reached through the hole and there was a cross piece across the door and we couldn't get in; and then went to the back and punched a hole in the back door and reached through and unlocked the door and then we went on in. While I was opening the back door Nat Rogers was on the front of the store and Junior Hill drove up in a 1952 Chevrolet two tone, light looking, with a brown bottom, to get some air. There were several people in the car. They didn't see us. And then Nat came on around to the back where I was opening the door. Then we went on in the store. We was looking for some cigarettes and we stayed and stayed in the store and Nat was looking for pants. Nat put a pair of pants and a pair of shoes, I think, in a box, and we decided to come on out; and when we started back to the back door, and I run into a little room where they keep drinks, when Mr. O'Reilly opened the door I didn't say anything and I was scared and I shot Mr. O'Reilly. When I shot the rifle it just kept shooting. I don't know how many times it shot. Nat Rogers made a shot with the shotgun and that knocked the lights out. I saw Mr. O'Reilly fall. I didn't see if he had a gun or not. Nat come in the room where Mr. O'Reilly was lying and he turned around went on back. We was in the store, it seemed like, a long time after I shot Mr. O'Reilly. I heard the officers telling me to come out of the store and I was scared to come out. Finally we got a chance to run out of the store, and I shot the carbine as I was running out the back door; and when I was running across the field I heard somebody shooting. I went on straight up the

cotton field where the red truck was set up at Nat's house, and went on around by a car and come out on a gravel road toward Vaughan. When I left the store I had the carbine with me and I had the tire tool stuck under my belt. Nat had a flashlight with him. It was a light looking flashlight with a red face where the glass goes in. He still had the flashlight when we carried the pickup back to the house. We put the guns back in the office when we got back to the house. When we went to the store I had a pair of Nat's gloves and Nat had Mr. Bebe's gloves that came out of the pickup. The gloves I had was black, and the ones Nat had was the kind that you drive in. Nat left the gloves that he had in the pickup. Me and Nat planned to go to Mr. O'Reilly's store that afternoon before it got dark. We were sitting by the Butane tank. We just said: 'Wonder where we could find some money', and I thought it ought to be some down at Mr. O'Reilly's. After we took the pickup back, I went home. I drove the pickup all the time he was in it; and it was Mr. Bebe's late model greyish Chevrolet pickup with a butane tank beside the seat.

"The above statement consisting of one page and about one fourth of a page, has been read to me, and it is true and correct to the best of my knowledge.

(Signed) "J. W. Simmons"

WITNESSES:

"W. T. Stubblefield, Sheriff

"W. B. Woodell, D. S. Yazoo County.

"L. Thames, Mississippi Highway Patrol, Jackson, Miss."

There are many assignments of error and a motion for a new trial. The main points argued on appeal are: (1) Motion for a change of venue; (2) the appellant's challenge for consideration of the acceptance of the juror Howard Moore; (3) objection to oath administered to jury; (4) the court erred in permitting the State

to introduce the confession of appellant; and (5) allowing counsel for the State in its cross-examination of appellant J. W. Simmons, over objection, to question him as to dates of certain convictions admitted by him.

The defendant was indicted at the April 1960 term of Court in Yazoo County. Testimony was given at that term on the change of venue.

A motion was made to quash the venire. At the same time a motion for a change of venue was made. After taking testimony on the change of venue, the court sustained the motion to quash the venire, and at the October 1960 term of court in Yazoo County the defendant was reindicted and he renewed this motion for a change of venue, and the court, over objection, considered testimony given at the April term on the change of venue and permitted the State to offer other testimony at that term, all of which was objected to by appellant. The appellant did not introduce any testimony on the change of venue.

Counsel for appellant requested a change of venue for two reasons, (1) because one of the two attorneys representing him was appointed from Madison County, and (2) because the public had prejudged the case in Yazoo County.

■■■ The record does not disclose that the attorneys were appointed by the court but does show that he was represented by able counsel. Section 2505, Miss. Code of 1942, Recompiled, states that "Where any person is in jail charged with a capital crime, or is indicted for such crime, and the court being first satisfied that such person is unable to employ counsel, such person shall be allowed counsel not exceeding two, to be chosen for him by the judge in vacation or by the court, to defend him in the circuit court, upon the trial of such charge * * *" We see no error in the contention as to appointment of attorneys. See Goldsby v. State, 240 Miss. 647, 123 So. 2d 429.

██ █ At the April Term of Court, nine people testified on behalf of the State as to prejudgment of the case. These witnesses included many public officials, including the Sheriff, Members of the Board of Supervisors, County Superintedent of Education, Circuit Clerk and the Tax Assessor, as well as the President of the Farm Bureau, all of whom represent the various areas of the county and are well informed as to the activities and interest of the people generally. They all stated that they had not heard of any prejudice, grudge or ill-will in the public mind against the defendant, and if there had been they would have heard about it, and also that they believed he could receive a fair and impartial trial in Yazoo County. They stated definitely that there was no aroused public sentiment in Yazoo County against the defendant.

The case was continued from the April to the October Term, and a new indictment was obtained, at which time another motion for change of venue was filed. At this term, four witnesses were introduced, including the chancery clerk, tax assessor, the executive vice president of a bank, and the operator of a seed and feed store. These witnesses testified substantially the same as at the former term. They represented all areas of the county, saw many people from all over the county, and they had not heard of any prejudgment, grudge, ill-will or prejudice, and believed that Simmons could receive a fair and impartial trial in Yazoo County. We believe that the court was justified in overruling the motion for a change of venue.

 █ On the voir dire examination of the juror Howard Moore, counsel for appellant objected to his acceptance because he stated under oath that he had heard about the case through the newspapers and over the radio, and that he had an impression from that source. He stated to the court that he did not have a fixed opinion and that it could be changed, that he was willing to

listen to the evidence with an open mind, and that he would decide the case on the evidence given and according to law.

"In Keeton v. State, 132 Miss. 732, 96 So. 179; Jones v. State, 133 Miss. 684, 98 So. 150, it was held to the effect that where the people of the county have not prejudged the defendant's case, then there is no prejudice against the accused and that the voir dire examination of the prospective jurors shows that a fair proportion of the jurors of the county are qualified for service in the case, it is not error for the trial judge to overrule a motion for a change of venue." Stokes v. State, 240 Miss. 453, 128 So. 2d 341.

"In Shimniok v. State, 197 Miss. 179, 19 So. 2d 760, the Court held the rule for our guidance in such cases was stated in Wexler v. State, 167 Miss. 464, 142 So. 501, where it was said: 'The granting of a change of venue is so largely in the discretion of the trial court that a judgment of conviction will not be reversed on appeal, on the ground that a change of venue was refused, unless it clearly appears that the trial court abused its discretion.'" Stokes v. State, supra.

In the entire examination, as shown from the record, the juror Moore had no interest, bias or prejudice in the prosecution, and no desire to reach a result other than gained from the evidence and the law in the case; and that any opinion he had formed would yield entirely to the evidence and the law.

"Appellant contends that the court erred in accepting the juror Pratt as a competent juror over appellant's objection. Section 2030, Code of 1930 (Section 1763, Code of 1942), provides that any person, otherwise competent, who will make oath that he is impartial in the case shall be competent as a juror in any criminal case, notwithstanding the fact that he had an impression or an opinion as to the guilt or innocence of the accused, if it appear to the satisfaction of the court that he has

no bias or feeling or prejudice in the case, and no desire to reach any result in it, except that to which the evidence may lead." Wampold v. State, 170 Miss. 732, 155 So. 350.

It is the opinion of the Court that there was no merit in this contention.

■■ ■ Attorneys for appellant objected to the oath administered to the jury, which is, as follows: "You and each of you do solemnly swear that you will well and truly try the issue between the State of Mississippi and J. W. Simmons and give a true and good verdict according to the law and evidence, so help you God."

This oath is in accordance with Section 2507, Miss. Code of 1942, Recompiled, and is substantially the same as the Code prescribes. The mere fact that the court asked for a "true and good verdict", in which the words "and good" were added, does not constitute reversible error.

■■ ■ Counsel for appellant also objects to introduction of the confession because it is claimed to have been induced by fear, force, threats and violence. Every officer making the arrest testified to the fact the confession was freely and voluntarily given; that no threats or violence were used nor promise of reward made. After the confession was made, it was reduced to writing (typed), and after having been read to him, the defendant Simmons signed it. It was properly witnessed by the Sheriff of Yazoo County and two other officers. Defendant testified that when he was arrested at Mr. Bridgeforth's place, Mr. Cole, one of the officers, struck him. The officer denied having struck him at any time. Simmons testified that at the time he confessed he was scared because Mr. Cole had hit him at the time of arrest, but that everybody treated him well; that he was just afraid of Mr. Cole. He finally stated that what he had told them was the truth.

"In Miller v. State, 207 Miss. 156, 41 So. 2d 375, 376, the Court said: 'The petitions alleged that appellant was an ignorant, uneducated Negro, of less than normal intelligence, twenty-two years of age; and that his confessions in the two cases were extorted from him by beating with a policeman's blackjack, threats against his life, and misrepresentation. Furthermore, he alleges that he was kept incommunicado, no attorney or member of his family were present when he made either his oral or written confessions, and members of his family were not permitted to visit him in jail. He also charges that when he was arraigned, he was unfamiliar with courts, had no attorney to advise him of his rights, and pled guilty because he knew nothing else to do. And that the court failed to appoint him an attorney, neither he nor his family being able to employ one. Appellant's evidence was along the line of his allegations in his petitions. .

" 'The State's witnesses, Mayor of Amory, Chief of Police of that city, policemen, deputy sheriffs, and private citizens all testified that he was not beaten, was not threatened, no misrepresentations were made to him, and no promises were held out to him, and that his confessions were free and voluntary, and that he fully understood what he was doing and saying. * * *

" 'Furthermore, the Supreme Court of the United States, in Bute v. People of State of Illinois, 333 U. S. 640, 68 S. Ct. 763, 92 L. Ed. 986, that: "In reviewing a conviction of crime, doubts should be resolved in favor of the integrity, competence, and proper performance of their official duties by the judge and state attorney." ' " Stokes v. State, supra.

. Nat Rogers, testifying on behalf of the State, stated what occurred in the robbery and killing of Mr. O'Reilly, which was virtually the same as the confession of defendant. Simmons took the stand in his own behalf and testified virtually the same as his written confession.

In Jones v. State, 222 Miss. 387, 76 So. 2d 201, in quoting from the case of Stone v. State, 210 Miss. 218, 49 So. 2d 263, 266, it was said: " 'In the case. at bar there was no prejudicial error in admitting that part of the statement where appellant admitted the larceny of the pistol for it not only identified the instrument with which deceased was slain but it further presented to the jury for their consideration the fact that appellant deliberately armed himself with a deadly weapon which fact has a bearing on his motive and premeditated design to effect the death of deceased.' ".

Quoting further from the above-mentioned case, the Court said: "He made a full and complete written confession under oath on the day following the killing and admitted his guilt freely and voluntarily. He testified that the statement was free and voluntary, that no threats were made against him and no promises of reward held out to him in order to induce him to make the confession. He further testified that all the officers were nice to him and, yet, on the witness stand he undertook to repudiate the confession on the sole ground that because they were officers he was afraid, though at the same time admitting that none of them had put him in fear in connection with the confession."

In the case of Taylor v. State, 188 Miss. 85, 194 So. 475, the Court held that where the appellant admitted on the witness stand that the confession he made was true; that there was testimony to the effect that no inducement nor threats made, that the confession was entirely voluntary, it was admissible, and the trial court did not err in permitting the testimony to be heard by the jury.

Counsel for appellant further argues that counsel for the State should not have been allowed to cross-examine him to show the time of certain admitted crimes in order to discredit him. We have repeatedly held that the State can show that the defendant had been convicted

of criminal offenses to discredit him as a witness, provided details of the same are not given. █ The defendant had admitted certain crimes, and it was proper for the State to show the dates. The mere fact that the crimes were committed several years prior to the robbery and murder would have been in the defendant's favor.

The finding by the jury that the defendant was guilty of murder is based on substantial testimony. After careful consideration of the case, fully conscious of our solemn duty, both to the law and the appellant, we have been unable to find any reversible error.

The judgment is affirmed, and Friday, July 14, 1961, is fixed as the date for execution of the death sentence so imposed.

Affirmed, and Friday, July 14, 1961, set for execution of the death sentence.

All Justices concur.